5Jb 505
27ap314

CHARLES I. and FRANCIS B. BALDWIN *vs.* THE UNITED
STATES TELEGRAPH COMPANY.

It being made the duty of telegraph companies, by statute, to transmit dis-
patches received from other companies of the same character, on payment
of the usual charges therefor, when one company receives from another a
message for transmission it is bound to send the same, with care and skill,
and a reasonable·dispatch, on receiving the compensation demanded; and
for any neglect or breach of duty in transmitting such message, it is liable,
either by virtue of a special contract, or one implied from its assuming the
duty and receiving the compensation.

A telegraph company, being required by a statute to transmit messages re-
ceived from other telegraph lines, on payment of the usual charges, having
received its due share of the compensation paid to a connecting line for
sending a message, there is a promise on its part, implied, at least, from its
duty to the sender, and from its receipt of the consideration, that it will per-
form the duty.

And this promise, being made for the benefit of the sender, enures to him, to
the same effect as a promise made immediately to him, and he can maintain
an action for its breach.

Under the provisions of the statute making it the duty of connecting lines of
telegraph to receive and transmit messages from other lines, where one com-
pany receives from another a message for transmission, it is to be implied in
· law, and the courts may assume it to be true, that arrangements have been
made between the connecting lines by which the compensation agreed upon
and received at the office which receives the message, is the full compensa-
tion for all the lines over which it is sent; and that, as between themselves,
the proportion of consideration received or to be received by each line is
understood and regulated.   And this creates an undertaking on the part of
each company with the sender of the message, that it shall be transmitted
over its line, and delivered according to the contract made at the receiving
office.

It is also implied, in law, that each separate line so connecting and acting in
concert, has constituted the line receiving the message, its agent for making
contracts over the lines of the others.

In an action against a telegraph company to recover damages for its failure to
transmit a message, the complaint alleged that such message, after being
delivered at the office of a connecting line, and paid for, was transmitted to
the defendant, but was never sent by the defendant to the person to whom it
was addressed.   The answer alleged that by the contract under which the
message was received by the defendant for transmission, it was stipulated
that the defendant would not be responsible for delays, errors, and remiss-
ness on the part of connecting lines; that it only guarantied entire correct-
ness when messages were repeated back, for which repetition an extra

Baldwin *v.* United States Telegraph Company.

charge would be made; and that such message was not repeated, nor requested to be repeated. *Held* that the answer set up no defense; neither delay, error nor remissness being charged, but an *entire omission* or *refusal* to send or deliver the message, which was admitted; and that an *entire* neglect and refusal to perform the contract did not bring it within the excepted terms.

An answer, in such an action, alleging that at the time of the delivery of the message to the defendant, it had established certain rules, regulations and conditions upon which it would accept and undertake to transmit and deliver messages, which rules &c. were well known to the connecting telegraph line from which the message was received, and that such rules &c. constituted the agreement in the case; but not alleging that it was an agreement made between the defendant and the plaintiffs, or that the latter had any knowledge or information of such rules &c., is also defective, and constitutes no defense to the charge against the defendant of a breach of duty.

The statute having imposed upon connecting lines of telegraph the duty of transmitting messages for each other; and the company receiving the message and the consideration, being the agent to make contracts for the other lines with which it is in connection; the contract of the agent is the contract of the principal which undertakes the performance of the duty, and may be enforced, if made within the legitimate business of the principal, or power of the agent. The private or other arrangement between the principal and its agent, not brought home to the party who contracts with the agent, does not affect the contract, as to such party.

By the well settled rules of pleading, each answer must of itself be a complete answer to the whole complaint; as perfectly so as if it stood alone. Unless in terms it adopts or refers to the matter contained in some other answer, it must be tested, as a pleading, alone by the matter itself contains.

THE defendants are a corporation, duly incorporated under the acts of April 12, 1848, and June 29, 1853, and the various acts amending the same, whose general business is to receive and transmit messages over certain lines of wire through the State of New York, and other states. One of their lines extends from Syracuse, N. Y., to Rouseville, in the State of Pennsylvania; another corporation, incorporated under the same act, and which transacts the same kind of business, had a like telegraph line extending from Ogdensburgh to Syracuse, N. Y., and was called "The United States *Branch* Telegraph Company."

In November, 1864, the plaintiffs, as they allege, being the owners of certain interests in oil lands in Venango

county, near Rouseville, Pennsylvania, which the plaintiffs were about to sell, but of the value of which they were ignorant, in order to learn such value one of the plaintiffs delivered at the office of the United States Branch Telegraph Company, at Ogdensburgh, a message in writing, to be sent to one Eric Darling, their agent at Rouseville, which was in the following words and figures:

" Ogdensburgh, November 16, 1864.    To Eric Darling, Rouseville, Venango county, Penn., at Williams' boarding house.    Telegraph me at Rochester what that. well is doing.            F. B. BALDWIN."

Baldwin paid to the operator of said telegraph company, at the time, about two dollars, to obtain the transmission of such 'message; and on the following day Baldwin went to Rochester to receive the reply to the message, and to sell their interests, according to the information he should receive in reply. He remained in Rochester nearly a week, and received no reply; and then sold his said oil interest for $3800.

Immediately after making such sale he received a message from said Eric Darling, dated at Rouseville, and which had been transmitted to Ogdensburgh, and thence repeated to him at Rochester, in the following words and figures, viz:

"Rouseville, November 25, 1864.    To F. B. Baldwin. Well flowing 80 barrels.    New well pumping twenty-five (25) barrels.    Can sell your interest for five thousand (5000) dollars. Telegraph me, refusal for ten days. Have Perry transfer to me.          E. R. DARLING."

The plaintiffs then allege that their message was correctly transmitted to the defendants at Syracuse, on the day of its date; that it was then put upon the defendants' lines, and was never transmitted by the defendants to said Eric Darling, who at the time, and long afterwards,

was at Williams' boarding house, Rouseville; that the plaintiffs' interests were, at that time, and for weeks afterwards, over the value of $5000 and upwards; that had the message been transmitted and delivered as directed, the intelligence they afterwards received from said Darling would have been directly transmitted to said F. B. Baldwin, at Rochester, and would have prevented a loss of $1200; and that they did actually sustain a loss to that amount, by reason that the defendants failed to transmit such message.

The defendants set up various defenses, the sixth, seventh and eighth divisions of which, only, come in question. The sixth answer set up that the plaintiffs' message was written upon a certain printed blank, in the words following:

"United States Branch Telegraph Company. Terms and conditions on which messages are received by this line for transmission.

This company will endeavor, by good faith and due diligence, to merit the confidence of the public. It will not be responsible for delays, errors and remissness on the part of connecting lines, and only *guaranties* entire correctness when messages are repeated back from the place to which they are sent; for which repetition a small extra charge will be made.

(Signed)     JOSEPH OWEN, General Superintendent." .

And the defendants alleged that such writing by the said F. B. Baldwin, on said blank paper, and the acceptance thereof by the said United States Branch Telegraph Company, constituted the contract by which said last mentioned company undertook to send the said message to Rouseville; and that the said message was not repeated, nor requested by the plaintiffs to be repeated.

The seventh answer set up for a separate defense that at the time of the delivery of the said message to the said

Baldwin *v.* United States Telegraph Company.

United States Branch Telegraph Company, and at all times thereafter, the defendants had established certain rules, regulations and conditions, upon compliance with which it would and did accept and undertake to transmit and deliver correctly telegraph messages, and without compliance with which it would not, and did not, so undertake. That such rules, regulations and conditions were printed by it upon the blanks used by senders of messages for writing thereon their said messages; and that said rules, regulations and conditions were publicly known, and were well known to the said United States Branch Telegraph Company, and their officers and servants, and were in the words following:

"In order to guard against error or delay in the transmission or delivery of messages, every message of importance ought to be repeated, and sent back from the station to which it is directed to the station from which it is sent, and compared with the original message. Half the tariff price will be charged for thus repeating and comparing.

And it is hereby agreed between the signer or signers of this message and this company, that this company shall not be held responsible for errors or delays in the transmission of this message, if repeated, beyond the amount of fifty dollars, unless a special agreement for insurance be made, and paid for, at the time of sending the message, and the amount of risk specified in this agreement; and that in case this message is not repeated, this company shall not be held responsible for any error or delay in the transmission or delivery of the same, beyond the amount paid for transmission, unless specially insured, and the amount of risk paid for and specified on this agreement at the time; nor shall this company be held liable for errors in ciphers or obscure messages, nor for any errors or neglect by any other company over whose lines this message may be sent to reach its destination; and this company is hereby made the agent of the signer of this

message, to forward it over the lines of other companies when necessary.

No agent or employee is authorized or allowed to vary the terms of this agreement, or make any other verbal agreement; and no one but the superintendent is authorized to make a special agreement for insurance.

This agreement shall apply through the whole course of this message, on all lines by which it may be transmitted."

And the defendants alleged that the said message was received by them to be transmitted for the said United States Branch Telegraph Company, upon the understanding and agreement that the defendants were not to be liable for any error or delay in the transmission or delivery of said message, or liable in any way in respect to said message on account of receiving the same, unless the said United States Branch Telegraph Company requested and paid to have the same repeated; that it did not request to have the same repeated, nor was it repeated in the manner provided for in said rules, regulations and conditions, nor in any way; and that said message was transmitted by the defendants from Syracuse correctly in all respects, but that the same was understood by the operator of defendants at Rouseville to be addressed to *E. R. Cooley*, instead of *Eric Darling;* and that the same was correctly written out in all respects, except as to said name, and was left at Williams' boarding house at Rouseville. And the defendants averred that the business of transmitting telegraphic messages is such that it is impossible to transmit messages correctly, with certainty, unless the same be repeated in the manner referred to, and described in the rules and regulations of the defendants above set forth, and in the printed blank above referred to; that the error in said name was not caused by any negligence or design on the part of the defendants, or in any of their servants or agents, and that the same could have been

corrected or prevented only by having said message repeated in the manner above referred to.

The eighth answer set up as a further and separate defense, that it was the duty of the plaintiffs, in the exercise of ordinary prudence in the transaction of business, to procure the dispatch first set forth in the complaint to be repeated, or to make inquiries whether it had reached its destination, or to send a new dispatch to their agent, or to use other means for securing the information which they sought in regard to their alleged interests, before completing the alleged sale thereof to said Thompson; that they had ample opportunity, time and means, to do all and each of those things, before completing said sale, and after the alleged sending of their first dispatch; and that by doing so they could have prevented the alleged damage; that the plaintiff did not have the said dispatch repeated, nor inquire whether it had reached its destination, nor send a new dispatch to their agent, nor use any other means, nor take any other precautions for procuring information respecting their alleged interests, after sending their first dispatch, and before completing said sale; and that in all and each of these respects they were guilty of negligence, and that said negligence on their part was the cause of the damage which, as they allege, they have sustained.

To the said sixth, seventh and eighth answers the plaintiffs severally demurred, on the ground that they did not state facts sufficient to constitute a defense.

This presented the question to be decided. The court at special term held the sixth and seventh answers sufficient, and the eighth insufficient; from which both parties appealed—each from so much of the decision as was adverse to themselves.

*Foote & James,* for the plaintiffs.

*George W. Soren,* for the defendants as respondents.

Baldwin *v.* United States Telegraph Company.

*By the Court,* POTTER, J. The questions to be decided here do not call for an adjudication upon the merits, or upon the rule of damages, if the plaintiffs' pleading shall be sustained; but the questions are strictly such as shall test the pleadings we have specified in the statement of the case; and,

*First.* As to the sixth answer of the defendants. In testing this as a pleading, we may take into consideration that it is made the duty of the defendants by statute (*Sess. Laws of* 1855, *ch.* 559) to transmit the plaintiffs' message, which they received from "The United States Branch Telegraph Company," and which was given to the latter company by the plaintiffs, at Ogdensburgh, on November 16, 1864. Whether the injury complained of arose from that implied contract which the law imposes upon every one who undertakes for another, or by virtue of the special contract which the defendants set up in the sixth answer, the defendants were in duty bound to send it, and in transmitting it were bound to exercise a degree of care and skill, and a reasonable dispatch in performing the duty or obligation they so undertook, and for which, by legal implication, they received from the plaintiffs all the consideration they demanded for the performance of such undertaking. This is to be implied from the undisputed facts that about the sum of two dollars was paid by the plaintiffs at the time, in advance, to secure the undertaking, and that the defendants actually undertook its performance for some consideration, as is also to be implied from the fact of receiving such message from their connecting line, the United States Branch Telegraph Company, and from the duty required by the statute. If, however, the undertaking of the defendants is put upon their alleged contract, set up in this sixth answer, it is found that it contains a pledge or promise, on their part, of good faith and due diligence in the performance of their duty. This answer sets up a defense that the agreement made by the plain-

tiffs with the United States Branch Company was the contract between the parties. Then, so far as this answer is concerned, this agreement is the contract by which the defendants entered upon its performance. By this agreement the defendants exempt themselves from liability on account of *delays, errors* or *remissness* on the part of connecting lines.

No act, however, or omission, or delay, error or remissness of any *connecting* line, is complained of by the plaintiffs. The complaint is against the defendants' own line. This part of the contract, therefore, and the exemption stated, does not apply to their defense. The remaining part of this alleged contract is the ground of their defense, to wit, " that they only *guaranty entire correctness* when messages are repeated back from the place to which they are sent; for which repetition a small charge will be made."

Assuming that the duty imposed by statute demanded of the defendants that they should transmit this message, and that they have received their due share of the compensation paid by the plaintiffs for the performance of the duty, it follows, logically, that there is a promise on their part, implied, at least, from their duty to the plaintiffs, and from their receipt of the consideration, that they will perform it; and this promise, being made for the benefit of the plaintiffs, enures to them to the same effect as a promise made directly to them, and they can maintain an action for its breach. Under the provisions of the statute making it the duty of connecting lines to receive and transmit messages received from other lines, connected with the fact that the defendants did receive the plaintiffs' message, it is to be implied in law, and the courts may assume it to be true, that arrangements have been made between the connecting lines, so that the compensation agreed upon and received at the office which receives the message, is the full compensation for all the lines over which it is

sent; and that, as between themselves, the proportion of consideration received or to be received by each line is understood and regulated between themselves; and this creates an undertaking or engagement on the part of each company with the sender of the message, that it shall be transmitted over their line, and delivered according to the contract made at the office at which the message was received; and it is also implied in law that each separate line so connecting and acting in concert has constituted the other—that is, the line which receives the message—its agent for making contracts over the lines of both.

Assuming the truth of this sixth answer, what, then, is the contract between the parties which we are now considering?

It was to send this message for a consideration then agreed upon between the parties, without a request to have the message repeated back, which repetition, *if requested,* would have called for a still *larger* compensation, and which larger compensation would have secured to the plaintiffs the *guarantee* of the defendants of the entire correctness.

The contract, then, was that the defendants would not be liable for *delay, error* or *remissness.* These being the only particulars specified in the terms and conditions of the special contract, they cannot claim exemption or release from any which by their contract they were bound to perform, other than such as are expressly specified. They cannot, in law, receive the consideration and be bound in duty, and then neglect or refuse to perform the duty at all. The complaint charges, not any *delay, error* or *remissness,* but that the message was never transmitted at all by the defendants to Rouseville, nor delivered to the said Eric Darling, who it is charged was then, and for a long time afterwards, at the place where the message was directed by the plaintiffs. This is denied by the sixth answer, which for this purpose stands alone. An

*entire* neglect and refusal to perform this contract, by the defendants, does not bring them within the excepted terms. "Delay" in sending and delivering a message, implies that it was or would be sent at some time, but not sent or delivered promptly. "Error" in sending or delivering a message, implies sending or delivering a *wrong* message, or to the wrong place or person. "Remissness" also implies a sending or delivering, but in a tardy, negligent or careless manner. It is neither delay, error nor remissness that is charged, but the entire omission or refusal to send or deliver the message, and this is admitted. It is true that it is stated in the complaint that the message was correctly transmitted to the defendants, and was then put upon their lines. The meaning of putting it upon their lines is not explained by either pleading, and whether or not it was sent on the wires we are not informed; but as this expression is immediately followed by the positive allegation that it was never transmitted, we cannot assume that it was, or that these two allegations, unexplained, are in conflict, but they must be construed to be in harmony. Then, in legal view, it comes to this: the defendants were employed and paid to transmit a message for the plaintiffs. This undertaking it was the defendants' duty to perform. They agreed to perform it; they failed to perform, and are guilty of a breach. I know of no reason why they are exempt from the same legal liabilities as would be any other party, whether professional or mechanical, who offers to perform duties, and who undertakes to perform, who receives a compensation for performance, and fails in the undertaking.

Whether damages are nominal, or actual and plenary, we are not called upon to decide. The answer sets up no defense.

I think, therefore, the judge at special term erred in overruling the demurrer to the sixth answer. This answer sets up and claims that the duty was performed under

and by virtue of the special contract therein set forth, but does not show that the defendants performed according to that contract, but admits a failure.

The seventh answer sets up a different special agreement, under which the defendants undertook the performance; but they do not allege or claim that it was an agreement made between them and the plaintiffs, or that the plaintiffs had any knowledge or information of the terms, rules, regulations or conditions by which they were regulated in the transmission of messages, which they claim constituted the contract. If we are right in the position that the statute having imposed the duty upon connecting lines of transmitting messages, for each other, and that the company receiving the message and the consideration is the agent to make contracts for the other lines with which it is in connection, then the contract of the agent is the contract of the principal who undertakes the performance of the duty. The contract made by the agent, whether it arises from implication of law or by express special terms, is the contract which may be enforced, if made within the legitimate business of the principal, or power of the agent. As between the agent and third parties, the apparent authority is the real authority. The private or other arrangement between the principal and their agent, not brought home to the party who contracts with the agent, does not affect the contract as to such party. What the contract was between the plaintiffs and the United States Telegraph Company, the defendants, is not set up in this seventh answer; and the private agreement between the latter and the defendants, or the knowledge of the branch company in relation to the terms, regulations and conditions of the defendants in their transmission of messages, is a matter of no importance, and constitutes no defense to the charge against the defendants of breach of duty. In this view it is not necessary to discuss what would have been the rights of the parties had

the plaintiffs sent the message from the defendants' office, written upon one of *their* blanks, containing *their rules, conditions and regulations*, as to their terms of transmitting messages.

But even if these rules, regulations and conditions were in legal effect to be brought to the plaintiffs' notice, there would still be a liability on the part of the defendants, as their conditions admit, to the amount of the consideration received by them for their agreement to transmit, and the breach of duty in this respect; and the answer would then admit a limited liability on the part of the defendants. I think, therefore, the special term was in error in over-ruling the demurrer to this seventh answer.

The eighth answer of the defendants sets up a want of the exercise of ordinary prudence on the part of the plaintiffs in respect to procuring the dispatch to be repeated, or to make inquiries whether it had reached its destination, or to send a new dispatch to their agent to ascertain whether the first had been received, or by other means to obtain the information they desired; and that by reason of these neglects and omissions they were guilty of negligence, &c.

By the well settled rules of pleading, each answer must of itself be a complete answer to the whole complaint; as perfectly so as if it stood alone. Unless, in terms, it adopts or refers to the matter contained in some other answer, it must be tested, as a pleading, alone by the matter itself contains.

Examining this answer by the rule we have stated, as an answer to the charge of the omission to transmit a message for which they have been paid, and which it was their duty to send, they do not even allege, directly, that they transmitted the message, or make any reference to the terms, conditions or rules which were made to control the contract. The court cannot, as matter of law, adjudge that ordinary prudence required that the plaintiffs should

have had the dispatch *repeated;* or that they should do any act, or take any other precaution than that of making the dispatch, delivering it to the defendants or their agents, to be transmitted, and pay the charges demanded for the service.

The law, then, casts the burden upon the defendants of showing, by an answer, a performance, or a good legal excuse for the non-performance, of their obligation. This answer is entirely deficient in setting up any defense except negligence, and this only in a manner which the court cannot adjudge as a question of law. The special term, therefore, correctly sustained the demurrer of the plaintiffs to this eighth answer.

I do not take the ground that the defendants are common carriers, nor that they may not limit their liability by special contracts, nor even that writing the dispatch upon the printed blank kept by the telegraph company may not bind the sender by the terms of the rules, regulations and conditions printed thereon, whether they were read by the sender of the message or not. But taking the rules, regulations and conditions set forth in the sixth answer to be the terms of the said branch company, to wit, that they only guaranty entire correctness when messages are repeated, and such repetition paid for, by an extra charge—the agreement in question is not brought within those terms. The extra charge was not paid, and no request was made to have the message repeated, and of course no *guarantee* of *entire correctness* was made by the defendants, or by their agent.

The message, however, was delivered, and its transmission paid for. What, then, was the contract? Had the plaintiffs required its repetition, it would have come within the terms of the guarantee, and the contract would be clear; but the company do transmit messages without the guarantee, and for a consideration paid for so doing. What, then, are the liabilities of the party undertaking?

Baldwin *v.* United States Telegraph Company.

Can they receive the consideration money, and refuse to send it? Can they send it part of the way, and refuse to send it further? Does the party who pays for the transmission take upon himself all the risks whether or not the company will perform their duty and send it? Is this reasonable? Is this law? I think not. There was an undertaking of some kind, in law, from the parties who received the message. If it did not come within the terms of the special agreement, then it is left as if there was no special agreement; and the agreement is such as the law implies, and there is an admitted breach. True, the printed notice upon which the message was written informed the sender that, for a certain *additional* charge, he could obtain a guarantee, but the plaintiffs chose to have it transmitted without the guarantee, and, of course, his remedy is precisely such as it would have been had there been no printed notice. I do not notice, further, the special terms of the contract set up in the seventh answer, for the reason that I have held that there is no allegation that any contract was made by the defendants with the plaintiffs, and that enough was not shown to bring the plaintiffs within its terms.

I am of opinion, therefore, that neither of the answers numbered *sixth, seventh* or *eighth* does set forth facts sufficient to constitute defenses to the matters set up in the complaint.

There should be a reversal of the order of the special term as to the sixth and seventh answers, with costs of the appeal and costs below; and the order of the special term as to the eighth answer should be affirmed, with costs of the appeal, with liberty to the defendants, on payment of costs, to answer over as to the said sixth, seventh and eighth answers.

Ordered accordingly.

[St. Lawrence General Term, October 1, 1867. *James, Rosekrans* and *Potter,* Justices.]