Wright, J.
The First National Bank of Barnesvillebrought an action in the court below, against the Telegraph-Company, to recover damages for' failure to transmit and deliver a telegraphic message. The bank was located in.Barnesville, Ohio. It had done business with oue Aaron Lowshe, and had frequently cashed drafts for him, in a small way, prior to February, 1869. In that month, Lowshe wanted two more drafts cashed — one on Beilis & Milligan,. New York, for $1,600; one on Ege & Otis, same place, for $1,400. The amounts being large, and the bank cautious, the cashier wrote to a correspondent in New York, George F~ Baker, cashier First National Bank, New York, as follows :
“ Would like information in respect to Mess. Ege & Otis,. No. 168 W. W. Market; also, Mess. West, Titus & Co., No.. 129 West street. Are they responsible parties ? If not too much trouble, would be pleased to have you inquire of each, if dft., at sight, drawn by A. Lowshe for $1400 to $1600-Would be paid. If the firms, or either of them, are not reliable for that amt., or if they should be-unwilling to accept, please answer by telegram. If all right, need not dis *562 patch. If not right, would like to hear by Saturday evening (13th).”
This letter was dated at Barnesville, February 11th, which appears to have been Thursday. No mention is made, it will be observed, of Beilis & Milligan, on whom! the $1,600 draft was drawn.
The letter was received in New York by Baker, to whom it was addressed, on February 15. It is stated in evidence that the ordinary time of mail communication, between "Barnesville and New York, is two days. This advice to Baker probably reached its destination after close of bank hours, on Saturday, and was taken up in the ordinary ■course of business on Monday morning. On that day "Baker made inquiries of Ege & Otis, on whom the $1,400 ■draft was drawn, and at 4.55 of that day telegraphed as follows, to the bank at Barnesville:
“ February 15, 1869.
•“ To J. F. Davis, Cash., Barnesville, O.
“ Parties will accept if bill lading accompanies the draft. "Parties stand fair. Geo. F. Baker, C.”
This message never was received at Barnesville. There •is testimony tending to show that it started to and perhaps reached Buffalo. But it is not traced beyond that point, •and the telegraph company give no satisfactory account of what became of it. The one certain fact about it is, that the Barnesville bank never received it. New York not "being heard from, the Barnesville bank cashed the drafts, on Monday the 15th, before three o’clock, the hour at which business closed. Lowshe, the drawer, had no money in New York at all, either in the hands of Beilis & Milligan, •or Ege & Otis, and having accomplished his financial transaction at Barnesville, left the same day for Zanesville, and ■from thence to other places more remote. The Barnesville bank now claims that the $3,000 was a total loss; and that this loss is chargeable upon the telegraph company, in not «ending and delivering the dispatch. They therefore claim 4o recover this amount in this action.
In the first petition of the bank, it is stated that the *563 drafts were discounted between two and three o’clock on the 15th, which would not have been done, had the dispatch been reasonably delivered. The answer of defendant, however, showed that the dispatch was not delivered in New York until 4.55 ; it is therefore entirely obvious, that'no omission, or neglect on the part of the telegraph ■company, could have prevented the cashing of the drafts.
In the last petition of the bank, it is said :
“ The said drafts were a total loss to said plaintiff, no part thereof having been paid, which said loss would have been prevented if said defendant had forwarded and delivered ■said dispatch to said plaintiff within a reasonable time after it was received by said defendant at its said office in New York city, as aforesaid.
“ If said dispatch had been delivered to said plaintiff before said drafts were discounted, the same would not have been discounted, and if it had been delivered to said plaintiff' within a reasonable time after the same were discounted, the said sum of $3,000 could have been recovered back by ■said plaintiff from said Lowshe.”
In the view we take of the case, the sole question that need be decided, is the one of damages. As has been said, had the dispatch been .duly sent and received, it could not have prevented the bank from giving Lowshe the money ; that had already been done. Had it been delivered, however, within any reasonable time, after receipt at New York, then w'hat would have happened? Plaintiffs below say they could have recovered back the amount from Lowshe, and therefore they lost their $3,000 by the negligence of the defendant. The petition does not state how or in what manner they could have recovered the money, but merely asserts the fact to'be so. The only facts in evidence showing any intention to take steps to recover the money, or intimating how it was to be done, is the following from the •cashier, Davis:
“ Q. Would there have been any trouble in the bank giving security in Zanesville in any proceeding to recover the money ? [Objected to.]
*564 “A. I think not.
“ Q. State whether, if this message had been received by the bank during the afternoon or evening of February 16,. 1869, any means would have been used to recover the money; if so, what?
“A. I am confident means would have been used to recover it.”
Mr. Lowshe also makes this statement:
“ Q. If the bank had discovered, while you were at Barnesville or Zanesville, that those drafts which you had' cashed at the Barnesville bank would not be accepted, and had demanded the money back, would you have refunded', it to the bank ?
“A. At Zanesville, on the afternoon of the first day there, I sent five hundred dollars of the money home. Had the bank informed me at Barnesville the drafts would not be accepted, I would have returned the money to the bank.. Had such information reached me at Zanesville, before I sent the five hundred dollars home, I would have returned it all. Had such information reached me at Zanesville after I sent- the five hundred dollars home, I would have returned the balance to the bank. I would have returned the-money immediately on receiving such information.”
In this connection the court charged the jury in effect,, that if defendants were guilty of negligence in not transmitting the message, then plaintiffs must show that Lowshe was where they could have reached him with legal process and that he had property in such position that the law could lay hold of it; and if this was not shown, but it appeared that the recovery of the money depended upon the happening of a new contingency which might or might not have occurred, the damages were so remote that no recovery could be bad.
Upon the case as thus made, we are clearly of opinion that the plaintiff was not entitled to substantial damages.
If the New York dispatch had arrived upon the 15th or 16th, it is not made apparent, either in pleadings or proof,, how the bank was to secure itself, -with that certainty the *565 law requires, in order to justify a claim for damages. It is not made to appear that Lowshe had property that could -be seized. He had obtained this money, it is true, and perhaps might have had it in his possession, but he might ■easily have put it beyond the reach of process. But even if he had the money where he could lay his hand upon it, it is not pointed out how the bank proposed to reach it. Had he been arrested on the ground of fraud, it might have been difficult to sustain such a proceeding, until after the drafts had been actually protested for non-acceptance, „by which time Lowshe was lost sight of. Nor is it alleged •or proved that an actual arrest would have produced the ■money. It is true, the bank claims tjhat Mr. Lowshe would have returned the money, because he said he would; still the jury might have considered that as the “mere contin.gency,” which the court instructed them, only occasioned a •damage that was l’emote.
The rule as to damages is thus laid down by Earl, J., in Leonard v. Tel. Co., 41 N. Y. 544 : “ The damages must flow directly and naturally from the breach of contract, and they must be certain both in their nature and in respect to the cause from which they proceed. Under this rule, speculative, contingent, remote damages, which can not be directly traced to the breach complained of, are excluded. Under the former rule, such damages are only allowed as may fairly be supposed to have entered into the contemplation of the parties, when they made the contract, as might naturally be expected to follow its violation. It is not required that the parties must have contemplated the actual damages which are to be allowed. But the damages must be such .as the parties may be fairly supposed to have contemplated when they made the contract. A more precise statement of the rule is, that a party is liable for all the direct d.am-.ages which both parties would have contemplated as flowing from its breach, if, at the time they entered into it, they had bestowed proper attention upon the subject, and had been fully informed of the facts.” See also Ringhorne v. Mont. Tel. Co., 18 Up. Can. Q. B. 60, and Stevenson v. Mont. *566 Tel. Co., 16 Ib. 530 ; Squire v. West. Union Tel. Co., 98 Mass-232.
This is substantially the rule as laid down in Hadley v. Baxendale, 9 Exch. 341, and in considering what damages' may be supposed to have been fairly within the contemplation of the parties, there was nothing in this dispatch to inform the telegraph company of the serious consequences that are now presented. There was absolutely nothing in' the-language of the message advising the company that it was to-prevent the cashing of $3,000 worth of drafts. Hadley v. Baxendale, and numerous authorities, hold that, before a-party can be charged with such special and peculiar damages as are here claimed, he must have had notice that they were likely to arise from a breach of his contract.
In Parks v. Alta Cal. Tel. Co., 13 Cal. 422, the message-was to attach property. This was of itself notice that if theattaehment was not procured, the loss of the debt might follow.
Bryant v. Am. Tel. Co., 1 Daly, 575, was, like the last, a case where an attachment was directed.
In U. S. Tel. Co. v. Wenger, 55 Penn. St. 262; Allen’s Tel. Cas. 356, there was an order to buy stocks, which was-delayed. The stocks rose in value, and the telegraph company were held responsible for the difference. And it is said by the court that the despatch was such as to disclose the nature of the business to which, it related, and the loss-might be very likely to occur if there was delay in sending-the message.
Upon the other - hand, in Baldwin v. Tel. Co., 54 Barb. 505 ; 1 Dans. 125 ; 45 N. Y. 744, the syllabus is : “ If a telegram does not show upon its face that it relates to a business transaction, and that a pecuniary loss may probably be sustained if a mistake is made in transmitting it, and no notice to this effect is given to the telegraph company, the-company making such mistake will not be liable in damages for such loss.”
In Landsberger v. Mag. Tel. Co., 32 Barb. 536, it was held that plaintiff could not recover damages, because, “ on re *567 ceiving the despatch for transmission, the defendant had no information whatever in relation to it, or the purposes to be accomplished by it, except what could be derived from the dispatch itself.”
In U. S. Tel. Co. v. Gildersleve, 29 Md. 407 : Allen Tel. Cases, 390, it is held that knowledge of special circumstances must be shown, to lay a foundation for special damages.. Stevenson v. Montreal Tel. Co., 16 U. Can. Q. B. 530, 537. The telegraph cases, generally, follow the rule of Hadley v. Baxendale, with regard to notice, as is shown by the numerous authorities cited by counsel.
It therefore appears to us that the possibility of recovering the money from Lowshe was a contingency too remote upon which to base a recovery. The fact that the-company were not advised of any importance attaching to-the message, either by the message itself or actual notice given, goes further to show a case where substantial damages can not be recovered.
And in this connection, and as relating to the question of damages, we may consider the rule, “causa próxima non remota spectatur,” as to which Parsons says (vol. 2, p. 257 — Telegraphs, measure of damages) : “ If the telegraph company is in default, but their default is made mischievous-to a party only by the operation of some other intervening-cause, then the rule above mentioned would prevent the liability of the company ; because their default would only be the remota, the remote or removed cause of the injury,, and not the próxima, or nearest cause.”
If the telegraph company were guilty of negligence in not delivering the message at Barnesville, the question remains, whether there would have been a loss if there were-no other cause intervening. Clearly the failure in the message was not the moving cause that induced Lowshe to obtain the discounts and pocket the money ; neither would the delinquency of the telegraph company have occasioned any damage had Lowshe evidenced that integrity which, in a virtuous mind, would have induced tiiereturn of the money to the bank. The loss was occasioned; *568 by two causes — the short-coming of the telegraph company, in not delivering the message, and the still shorter-coming of Lowshe, in appropriating to himself what belonged to somebody else.
In Lowery v. Western Union Telegraph Co., 60 N. Y. 198, B. sent a telegram to plaintiff, asking for $500 ; by mistake, the telegraph company changed the message to $5,000,' which B. obtained, embezzled, and absconded. The referee ■held the telegraph company liable for the loss in the whole amount. This was held error; that defendant’s negligence was not the proximate cause of the loss, as -the embezzlement of B. did not naturally result therefrom, and could ubt reasonably have been expected.
In this case, the court, quoting from Crain v. Petrie, 6 Hill, 522, lay down this rule: “To maintain an action for ■special damages, they must appear to be the legal and natural consequences arising from the tort, and not from the wrongful act of a third person induced thereby. In •other words, the damages must proceed wholly and exclusively from thejnjury complained of.”
In any aspect, therefore, in which we are able to view the case, we can not but consider that the damages are too remote to uphold recovery to any substantial amount.
But the plaintiff was entitled to recover nominal dam.ages. Upon the breach- of an agreement, the law infers damages, and if none are proved, nominal cau be recovered. Sedgwick on Damages, 47; Field on Damages, 679; Parks v. Alta Cal. Tel. Co., 13 Cal. 425; Candee v. West. Un. Tel. Co., 34 Wis. 471.
The plaintiff asked the court to charge that, if the nondelivery of the message was by reason of defendant’s negligence, plaintifl was entitled to nominal damages, if there were no actual damage. This was refused, and the court did charge that there was no right of action, unless injury was shown. This was error, for which the judgment must be reversed.
The state of the pleadings relieve us from consideration of those points in the case which refer to the special con *569 tract which forms the heading to the message itself. This •contract was set up as a defense in the answer to the original petition. Subsequently, however, an amended petition was filed. To this an answer was filed, not making the original answer a part thereof, and not setting up the special contract as a defense. In this state of the pleadings, we look to the amended petition and answer •alone. Thus the special contract is eliminated from the •case.

Judgment reversed.