(6 Misc. Rep. 221.)

### RILEY v. WESTERN UNION TEL. CO.

(City Court of New York, General Term.    December 8, 1893.)

1. TELEGRAPH COMPANIES—LIMITATION OF LIABILITY
    A condition that a telegraph company will not be liable for mistakes or delays in the transmission or delivery, or for the nondelivery, of any unrepeated message, beyond the amount received for sending the same, nor from delays resulting from unavoidable interruptions in the working of its line, is reasonable, and not against public policy.

2. SAME—DELAY IN TRANSMISSION.
    A message was delivered at defendant's office for transmission about 1 o'clock P. M. The operator immediately, but without success, "called" the office to which the message was addressed, and repeated the calls at intervals of from five to ten minutes thereafter, until 2:10 P. M. The message reached the office to which it was addressed at 2:22 o'clock, and was sent out for delivery, in the usual course of business, at 2:40. On the day in question, a wire between the two offices was "dead." *Held,* that defendant was not liable beyond the amount received for transmitting the message, its liability being so limited by contract in case of delays resulting from unavoidable interruptions in the working of its lines.

Appeal from trial term.

Action by James Riley against the Western Union Telegraph Company for damages sustained by reason of delay in the delivery of a telegraphic message sent by plaintiff.    From a judgment entered on a verdict in favor of plaintiff for $306.87, and from an order denying a motion for a new trial, defendant appeals.    Reversed.

Argued before NEWBURGER and McCARTHY, JJ.

Rush Taggart, for appellant.

L. J. Morrison, for respondent.

McCARTHY, J.    This is an action brought to recover damages for injuries sustained September 13, 1892, by a sailing yacht, resulting, as is alleged, from the negligence and carelessness of the defendant, the Western Union Telegraph Company, a corporation organized under the general statutes of New York, in not promptly delivering a message written upon one of the defendant's regular message forms, and intrusted by the plaintiff to it for transmission to James R. Mack at Bath Beach, L. I., as follows:    "Ask Garry

take boat to club house; going to storm. Riley." The defendant, while admitting that it received the message at one of its offices, 233 Grand street, in the city of New York, and that plaintiff paid the sum demanded for the service, 25 cents, denies all negligence, carelessness, and want of skill in the transmission of the message, and by way of special defense, and in mitigation of damages, alleges that said money was received by it under the terms of a special contract between plaintiff and defendant whereby plaintiff agreed that defendant should not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated message, beyond the amount received for sending the same; and further alleges that plaintiff's said message was an unrepeated message, and was delivered to defendant to be transmitted as such, and was paid for as such unrepeated message. Defendant also alleges that all delay which may have occurred was due to atmospheric disturbances and causes beyond human control, and not from any negligence or unskillfulness on its part. The plaintiff offered evidence tending to prove that plaintiff delivered the message in question at one of the defendant's offices at 233 Grand street, in the city of New York, at 12:15 o'clock in the afternoon of September 13, 1892; that it was written upon one of defendant's regular message blanks, and that the plaintiff at the time knew of the conditions upon the face and back of the blank; that it was delivered by the defendant's messenger at the Grange, in Bath Beach, to one Annie Hutton, for the addressee, who receipted for it at 2:45 o'clock on the same day; that Miss Mack, daughter of the addressee, received the message from a little girl between 3:05 and 3:30 o'clock; that Miss Mack handed it to a daughter of the plaintiff; that Pauline Grumbrede, a daughter of plaintiff, received it from Miss Mack "about 3:30 P. M.," and that she took it down to the pier, and gave it to Garrett Van Cleef, about 10 minutes after she received it. Mr. Van Cleef testified he received it about 4 P. M., to the best of his recollection, and that at the time he received it Mrs. Grumbrede asked him if he could take the boat to the yacht club, and answered, "If I had had the dispatch an hour ago, I could have done so, but not then; it was impossible for me alone to take it then." The storm came up about noon, increasing in violence throughout the day. The boat went ashore some time during the night, after 7 or 8 o'clock in the evening. On the part of the defendant the testimony showed that the message was sent from the Grand street office in the usual course of business, and was received at the main office of the defendant, 195 Broadway, New York city, before 1 o'clock, at which time the operator "called" the Bath Beach office, but could not "raise" it, and she made a note to this effect on the back of the message. Similar attempts were made, with like result, to communicate with the Bath Beach office, at 1:15, 1:25, 1:30, 1:40, 1:50, 2, and 2:10 P. M., all of which were noted on the back of the message. The message was sent at 2:10 P. M., was received at Bath Beach at 2:22 o'clock, and was sent out for delivery, in the usual course of business, about 2:40 P. M. It further appeared that the telegraph wire between New York city

and Bath Beach was "grounded," or "dead," from 12 o'clock noon to 2:22 P. M. of that day. It was delivered at the Grange, where it was addressed, at 2:45 P. M. as shown by plaintiff's witnesses. The jury found for plaintiff in the sum of $234.50. Defendant moved for a new trial, which was denied, and judgment was entered for the amount of the verdict and costs, aggregating $360.87. Defendant appeals from both the order denying the motion for a new trial and from the judgment.

The statement of the terms by the defendant upon which messages would be transmitted over its lines, and the knowledge and acceptance of these terms by the plaintiff, constitutes a valid contract as to the terms upon which the message in question was sent. Young v. Telegraph Co., 65 N. Y. 163, 165. This message was not repeated, and one of the terms of this contract was that the defendant would not be "liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending the same, * * * nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages." These conditions are reasonable, and not against public policy; on the contrary, they subserve it to carry out the objects for which telegraphic associations are created, and especially to secure the receipt of a message in the words in which it is written and delivered for transmission; and under their general power the defendants are authorized to prescribe such regulations as they deem necessary, to guard against errors or delays by reason of the negligence or omission of their employes in the transmission or delivery of messages, and to declare that a party who fails to comply therewith should assume all risks and losses resulting from such errors or delays. Breese v. Telegraph Co., 48 N. Y. 138, 139, 141. Unless, then, there is some evidence of willful misconduct or gross negligence on the part of the defendant, the plaintiff's damages, even if the defendant is negligent, are limited to the amount paid for sending messages; for all the authorities declare, in case where no contract has been made, and where the message is sent unconditionally, that mere delay, unexplained, is prima facie evidence of negligence, but not so in view of the terms of the contract, in order to entitle plaintiff to recover any greater sum than provided for by the contract. Allen, J., in Baldwin v. Telegraph Co., 45 N. Y. 751, 752, says:

"But an error in transcribing the direction, and a consequent misdelivery, are prima facie evidence of neglect and want of care in the operator, and cast the burden upon the company in explaining the error, and showing that it occurred without fault. This is upon the supposition that the message is received for transmission unconditionally. For the purposes of this appeal, it is assumed, but not decided, that this message was not subject to the terms and conditions ordinarily attached to the receipt of messages for transmission, but that the defendant is subject to all the liability which legally results from a receipt of a message, and a naked agreement to transmit the same to its destination for a reasonable compensation paid therefor. If the terms and conditions ordinarily imposed were a part of the contract, the question would arise whether the defendant would not be protected against liability for the 'error and delay' in the delivery of the dispatch. See MacAndrew v. Telegraph Co., 17 C. B. 3; Ellis v. Telegraph Co., 13 Allen, 226."

It is conceded that the day on which the message was sent was a stormy one, which began at 11:30 o'clock A. M., and increased in violence towards night.    It appears by the testimony that, besides this, the operator in the general office in New York city made repeated efforts to transmit said message between 1 and 2:20 P. M., and that the wire was "grounded" or "dead," and thus the defendant was unable to send any message until 2:20 o'clock P. M., when for the first time it secured communication.    That the operator at Bath Beach, at about 12:45 o'clock P. M., discovered his wire connecting with New York city was in trouble, or "grounded," or "dead," and he prevented from transmitting any messages over the same.    He endeavored to transmit messages between that time (12:45 P. M.) and 2:20 o'clock P. M., when he received the one in question.    That he kept testing, between the intervals of 10 and 15 minutes, until he finally received this message.    Thus it seems that this interruption and delay was not willful, nor was it due to any gross negligence.    The authorities recognize a distinction in the degree of negligence by the degree of care required.    1 Bouv. Law Dict. p. 225, as follows:

"Thus, in the first class, the bailee is required to exercise only slight care, and is responsible, of course, only for gross negligence. In the second, he is required to exercise great care, and is responsible even for slight neglect. In the third, he is required to exercise ordinary care, and is responsible for ordinary neglect."

Gross negligence is therefore the want of slight care.

We have examined the testimony carefully, and cannot find any evidence showing a want of slight care; and, when such arises, it then becomes a question of law for the court, and it is error for the court to submit the case to the jury.    They cannot be permitted to speculate or conjecture, nor to determine the question by bias, prejudice, or passion.    There must be some foundation, as well as substance, in the evidence, upon which they can act.    The defendant did all that could be done under the circumstances, and the delay was not unreasonable.    It was undoubtedly for the purposes of guarding against such occurrences as the present that the contract contained in the blank message was made.    Pearsall v. Telegraph Co., 124 N. Y. 266, 267, 269, 26 N. E. 534; Kiley v. Telegraph Co., 109 N. Y. 235, 236, 16 N. E. 75.    Earl, J., at page 236, 109 N. Y., and page 77, 16 N. E., says:

"It is not the case of a message delivered to the operator, and not sent by him from his office. This certainly would be gross negligence."

Daly, C. J., in Sprague v. Telegraph Co., 6 Daly, 203, (affirmed in 67 N. Y. 590, on opinion below,) says:

"The expense which the plaintiff was necessarily put to through their neglect is not embraced by any of the stipulations limiting the damages to the amount received for sending the message. This was not a 'mistake or delay in the transmission or delivery, or a nondelivery,' but an entire breach of the contract by a neglect to send the message at all, and which rendered them liable for such damages as were the direct, natural, and proximate consequences of their total neglect to do what they had engaged to do. De Rutte v. Telegraph Co., 1 Daly, 547."

Here, in our judgment, is a clear and decisive explanation of what is willful misconduct or gross negligence. The cases cited by the respondents have been carefully examined, and we find that they do not apply. They are either where the contract was not as broad as the one at bar, or, in other words, not containing the same limitations, or was, as in Milliken v. Telegraph Co., 110 N. Y. 403, 18 N. E. 251, on a new contract, without limitation, made with the person to whom the message was to be sent or delivered. There being no evidence of willful misconduct or gross negligence, the trial justice erred in not granting the defendant's requests that the court direct a verdict for the plaintiff not to exceed 25 cents, the amount paid for the telegram or message; that the court charge the jury that there is no evidence from which they can find that the defendant was guilty of any negligence in failing to deliver the message, or in delay as to the delivery. For these reasons, judgment should be reversed, and new trial granted, with costs to the appellant to abide the event.