JAMES T. BIRKETT v. THE WESTERN·UNION TELEGRAPH COMPANY.

*Telegraph companies—Regulation limiting liability—Unrepeated message—Delay in transmission—Gross negligence.*

1. Telegraph companies, in the absence of a statute making them such, are not common carriers; citing *Telegraph Co. v. Carew,* 15 Mich. 525.

2. A regulation by a telegraph company that, to guard against mistakes or delays, the sender of a message should order it repeated,—that is, telegraphed back to the originating office for comparison,—for which service one-half the regular rate would be charged, and limiting the liability of the company for mistakes or delays in the transmission or delivery or for the non-delivery of any unrepeated message, whether happening by the negligence of its servants or otherwise, to the amount received for sending the message, is such a reasonable condition as the law authorizes the company to make.

3. The sender of a message written upon a blank furnished by the company, and signed by him, upon which is printed said regulation, is bound by the same whether he had knowledge of its contents or not, and, in the absence of gross or willful negligence upon the part of the company, it is not liable, except as stated in said regulation, for delay in the transmission of the message.

4. A message was left for transmission at a railway station, at which the telegraph company receiving it had an office, which was one with that of the railway company, as was its office at the station to which the message was to be sent, it having an arrangement with both railway companies by which their operators at said stations attended to its business. The message had to be sent *via* a city about 12 miles distant from the re-

ceiving office of the telegraph company.  It reached said city in due time, but owing to the failure of the operator at the delivery office, who was temporarily in charge during the absence of the regular operator, to make the proper connection with the city office, the message was four hours late in its delivery.  The telegraph company had provided suitable instruments and competent operators.  And it is held that the failure of the temporary operator to make the proper connection with the city office was not gross negligence, within the definition adopted by the Court in *Denman v. Johnston*, 85 Mich. 387; *Frost v. Railroad Co.*, 96 Id. 470.

Error to Wayne.  (Brevoort, J.)  Argued June 7, 1894. Decided December 28, 1894.

Case. Defendant brings error.  Reversed.  The facts are stated in the opinion.

*C. A. Kent,* for appellant.

*David W. Brooks (Otto Kirchner,* of counsel), for plaintiff.

GRANT, J.  Defendant has a telegraph office at Hand station, on the Wabash Railroad, 12 miles from Detroit, and also at Dearborn, on the Michigan Central.  The distance between them is between three and four miles. At both places the office is one with that of the railway company, and the operators are those employed by these companies.  Defendant has an arrangement with the companies, by which their operators at these stations do all its business.  It has no contract with the operators, and no control over them.  The entire receipts of the defendant at Hand are about $2.50, and at Dearborn about $4, per month.  The cost of a telegraph operator at either place would be about $40.

Plaintiff resided at Hand station.  His wife was taken sick on the morning of August 26, 1890, and a physician residing at Dearborn was summoned to attend her.  She

was suffering from a miscarriage. The flow of blood was stopped, and the physician left, with instructions to send for him if the hemorrhage returned. About 9 o'clock in the morning she became worse. At 10 o'clock plaintiff sent an unrepeated message to the physician at Dearborn, saying, "Come to my house quick." He also informed the operator of Mrs. Birkett's illness, and of the necessity of haste. The message had to go by way of Detroit. It reached the latter place in due time, but the operator at Detroit could not get the operator at Dearborn, although he tried many times. The message should have been delivered in about half an hour, but was not delivered until about 2 o'clock P. M. The regular operator at Dearborn had been granted leave of absence, and his place temporarily supplied by another, who did not make the proper connection with the Detroit office of the defendant. This was the reason of the delay in sending the message. It is claimed by plaintiff that the health of his wife was seriously injured by the delay in the delivery of the message, and the consequent failure to obtain medical attendance and treatment, and also that he had been subjected thereby to expense in procuring medical attendance and medicines. For the alleged injury he recovered verdict and judgment of $2,500.

The telegraph blank upon which the message was sent, and signed by the plaintiff, stated that it was taken by the company subject to the terms thereon printed. One of these terms reads as follows:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition."

It further provided that the company should not be liable for mistakes or delays in the transmission or delivery or for the non-delivery of any unrepeated message, whether

happening by negligence of its servants or otherwise, beyond the amount received for sending the same. The first defense set up against this action is this condition, which defendant insists was a part of the contract between it and the plaintiff, and is such a reasonable condition as the law authorizes it to make.

It was settled in this State by the case of *Western Union Telegraph Co. v. Carew*, 15 Mich. 525, that telegraph companies, in the absence of any provision of the statute, are not common carriers, and that the regulation stated above is reasonable, and binding upon the senders of messages, whether they had knowledge of its contents or not. This has been accepted as the law in this State for 27 years. The telegram, as written, used the word "forty," as delivered, the word "four." The Legislature has not seen fit to change the liability of telegraph companies, as there established; and, whatever might be the views of any of us if it were a new question, we are not disposed to overrule that case, which received the sanction of the three eminent jurists who decided it. The reasoning of that decision is substantially the same as that found in the decisions of many other courts, some of which are cited in the opinion. In addition to the cases there cited, we cite the following: *Ellis v. Telegraph Co.*, 13 Allen, 226; *Grinnell v. Telegraph Co.*, 113 Mass. 299; *Kiley v. Telegraph Co.*, 109 N. Y. 231; *Redpath v. Telegraph Co.*, 112 Mass. 71; *Clement v. Telegraph Co.*, 137 Id. 463; *Telegraph Co. v. Hearne*, 77 Tex. 83; *Passmore v. Telegraph Co.*, 78 Penn. St. 238; *Becker v. Telegraph Co.*, 11 Neb. 87; *Wann v. Telegraph Co.*, 37 Mo. 472; *Lassiter v. Telegraph Co.*, 89 N. C. 334; *Telegraph Co. v. Gildersleve*, 29 Md. 232; *Hart v. Telegraph Co.*, 66 Cal. 579.

In *Ellis v. Telegraph Co.*, the dispatch, as sent, read, "Ten (10) men, one hundred twenty-five dollars." As received, it read, "Ten (10) men, one hundred seventy-

five (175) dollars." In *Grinnell v. Telegraph Co.*, a material part of the message was omitted. In *Kiley v. Telegraph Co.*, the message was never delivered. In *Redpath v. Telegraph Co.*, the message was never delivered, but was sent to Oswego, instead of to Owego. In *Clement v. Telegraph Co.*, the message was not delivered until five days after its receipt. In *Telegraph Co. v. Hearne*, the dispatch read: "Return note left by Hearne. Draw for $500." As delivered, it read: "Return note left by Hearne, order $500." The plaintiff in the court below recovered a verdict for $25,000. In *Passmore v. Telegraph Co.*, the dispatch, as sent, read, "I hold the Tibbs tract for you." As received, it read, "I sold the Tibbs tract for you." In *Becker v. Telegraph Co.*, the dispatch, as sent, read, "One fifty;" as received, "One sixty." In *Wann v. Telegraph Co.*, the dispatch, as sent, read, "Ship by sail;" as received, "Ship by rail." A similar mistake occurred in *Lassiter v. Telegraph Co.*, which case has, however, been recently overruled by *Brown v. Telegraph Co.*, 111 N. C. 187. In *Telegraph Co. v. Gildersleve*, the dispatch was never delivered. In *MacAndrew v. Telegraph Co.*, 17 C. B. 3, the message directed a vessel to proceed to Hull. The message, when delivered, read "Southampton." In the above cases this regulation was held reasonable, and the failure to order the message repeated a complete answer to the action. Several of the authorities above cited recognize the rule that any condition relieving telegraph companies from liability for gross negligence, willful misconduct, or fraud is void, as against public policy. This rule is also recognized in the following authorities: *White v. Telegraph Co.*, 5 McCrary, 103; *Telegraph Co. v. Howell*, 38 Kan. 685; *Telegraph Co. v. Goodbar* (Miss.), 7 South. Rep. 214.

The authorities are not uniform, and several authorities will be found to the contrary. The rule is criticised in Thompson on the Law of Electricity (chapter 8), where

the authorities will be found collated. We do not deem it important to cite them here. Some of them recognize the right of telegraph companies to establish reasonable rules and regulations for the conduct of their business. Some also recognize these regulations as valid, but strip them of their force by holding that they do not apply to nor relieve a telegraph company in case of negligence. Speaking for myself, I can see no object in the regulation, unless it be to relieve the company from certain negligent acts of its employés. If they be not common carriers,— and this is almost universally admitted,—then there is no liability, except in case of negligence. If delay in delivery, or failure to deliver, or mistake in the wording of messages, is attributable to storm, to accident, to sudden sickness of an operator or a messenger, or to any cause which does not of itself imply negligence, there can be no liability. What purpose, then, is there in, or what benefit is, such a regulation, if it still leaves open the question of negligence against them, where the sender does not choose to comply with the conditions to which he has agreed, and which will, in all probability, insure the delivery of his message as written? In commenting upon this class of cases, which hold that telegraph companies cannot stipulate against any negligence on the part of their employés, the supreme court of California says:

"But, as this latter class of cases concede that telegraph companies are not common carriers, their liability must rest on the ground of negligence or willful misconduct, which is fraud. Fraudulent conduct on the part of the company would, of course, vitiate such a stipulation; but to say that no stipulation can be made, limiting their liability for negligence, is to say, in effect, that no stipulation can be made limiting their liability at all. It seems to us, therefore, that we must either hold, as did the courts in Illinois, Maine, and Wisconsin, that such stipulations are invalid because unsupported by a consideration and contrary to public policy, or that it is competent for

telegraph companies to stipulate for the limitation of their liability for errors arising from any cause except willful misconduct or gross negligence." *Hart v. Telegraph Co.*, 66 Cal. 583.

The court below and counsel appear to have recognized the rule as established in the Carew case, for it was left to the jury to determine whether the defendant was guilty of gross negligence in the failure to deliver the message within the usual time. Such failure is certainly no more gross negligence than in the cases above cited where the message was not delivered at all, and in others where the language was very materially changed and serious damage resulted. Negligence is the gist of these actions. It must be both alleged and proven. Some authorities hold that proof of the delivery of the message to the company by the sender, and of the failure to deliver, or of delay in delivery, or of its receipt, in language materially different from that in which it was sent, makes a *prima facie* case of negligence, and casts the burden of proof upon the company to explain. This may be the correct rule, since the facts are peculiarly within the knowledge of the company, but that question is not now involved, since the cause of the delay is conceded.

The highest judicial tribunal in this country, in the recent case of *Primrose v. Telegraph Co.*, 154 U. S. 1, has passed upon the precise question. The authorities are there cited and discussed in an exhaustive opinion by Mr. Justice Gray. The Carew case is cited, and its language quoted with approval. The regulation in that case is identical with the one in this, and it is sustained in its entirety. Mr. Justice Gray cites and discusses the decisions holding the regulation to be against public policy and void, among which is the case *Tyler v. Telegraph Co.*, 60 Ill. 421. He quotes the language of that decision, and says of it:

" The effect of that construction would be either to hold' telegraph companies to be subject to the liability of common carriers, which the court admitted, in an earlier part of its opinion, that they were not, or else to allow to the stipulation no effect whatever; for, if they were not common carriers, they would not, even if there were no express stipulation, be liable for unavoidable mistakes, due to causes over which they had no control.     *     *     *

" The conclusion is irresistible that, if there was negligence on the part of any of the defendant's servants, a jury would not have been warranted in finding that it was more than ordinary negligence, and that, upon principle and authority, the mistake was one for which the plaintiff, not having had the message repeated according to the terms printed upon the back thereof, and forming part of his contract with the company, could not recover more than the sum which he had paid for sending the single message."

It is therefore clear that, in order to hold this regulation, which was a part of the contract, void, we must not only overrule the decision of our own Court, but must run counter to the great weight of authority. We do not feel justified in doing this. See, also, *Riley v. Telegraph Co.* (City Ct. N. Y.), 26 N. Y. Supp. 532; *Beasley v. Telegraph Co.*, 39 Fed. Rep. 181, quoting the Carew case with approval.

The statute of California requires telegraph companies to " use great care and diligence in the transmission and delivery of messages." Civ. Code, § 2162. The federal court in that state held that a company could not, by stipulation, relieve itself from the liability imposed by this express enactment. *Telegraph Co. v. Cook*, 9 C. C. A. 680, 61 Fed. Rep. 624. In its decision, the court say:

" The nature of the employment is so peculiar, the risks attending it so extraordinary, that it is not unreasonable to uphold such stipulations, to the extent of limiting the liability of the company for losses not occasioned by its want of the care and diligence exacted by the law under which it operates."

It is further argued by the learned counsel for the plaintiff that the repetition of the message would not have prevented the damage complained of, and that, therefore, the failure to have it repeated does not protect the defendant from liability. In the monographic note to *Camp v. Telegraph Co.*, 71 Am. Dec. 468, the following authorities are cited as supporting this contention: *Telegraph Co. v. Graham*, 1 Colo. 230; *Telegraph Co. v. Fenton*, 52 Ind. 1; *Birney v. Telegraph Co.*, 18 Md. 341; *Ellis, v. Telegraph Co.*, 13 Allen, 226; *Baldwin v. Telegraph Co.*, 54 Barb. 505; *Sprague v. Telegraph Co.*, 6 Daly, 200; *Bell v. Telegraph Co.*, 25 L. C. Jur. 248.

In *Telegraph Co. v. Fenton*, the action was based entirely upon the statute of the state of Indiana, and not upon any contract between the parties. The court in *Birney v. Telegraph Co.* based its holding entirely upon the fact that no effort whatever was made by the company or its agents to place the message upon its transit. The decision recognizes the validity of a regulation similar to that in the present case.

In *Baldwin v. Telegraph Co.*, the defendant was a connecting line, and received the message from the United States Branch Telegraph Company, to whom the plaintiffs had given it for transmission. The defendant set up its agreement with the other company, to which the plaintiffs were not parties. The court say, at page 516:

"It is not necessary to discuss what would have been the rights of the parties, had the plaintiffs sent the message from the defendants' office, written upon one of *their* blanks, containing *their rules, conditions, and regulations* as to their terms of transmitting messages."

The italics are those of the decision.

*Sprague v. Telegraph Co.* is another case of the same character. The court say, at page 203:

"This was not a mistake or delay in the transmission or delivery, or a non-delivery, but an entire breach of the contract, by a neglect to send the message at all."

In *Bell v. Telegraph Co.*, plaintiff telegraphed to one Machar, to which Machar immediately sent an answer by the defendant's line, which was never delivered. Stress appears to be laid in the opinion upon the fact that plaintiff was to be the recipient of ¦the message, and was not a party, therefore, to the conditions of the message sent. The liability, however, was chiefly placed upon the law of the Dominion in relation to common carriers, which is quoted in the opinion as follows:

"Notice by carriers of special conditions limiting their liability is binding only upon persons to whom it is made known; and notwithstanding such notice, and the knowledge thereof, carriers are liable wherever it is proved that the damage is caused by their fault, or the fault of those for whom they are responsible."

The principles of this law are then briefly applied "to the case in hand," and the defendant held liable.

It is apparent, we think, that these decisions do not sustain the text of the learned editor, and throw no light upon the present controversy. In *Telegraph Co. v. Graham*, it does not clearly appear where the mistake occurred. The statement in the opinion is that "the message was not transmitted and delivered." It may be inferred from this that the message was never placed in transit. While the language of this opinion sustains the text, it is significant that there was no stipulation, as in the case at bar, that the company should not be liable in the case of an unrepeated message. The notice simply stated that messages of importance ought to be repeated, and attempted to limit the liability, in the case of repeated messages, to 500 times the amount paid for sending them. In *Ellis v. Telegraph Co.*, the language upon this point was *obiter dicta*, and so

held by the same court in subsequent decisions hereinafter cited.

This rule appears to be sanctioned in *Fleischner v. Cable Co.*, 55 Fed. Rep. 738. The defendant in that case was clearly liable upon other grounds. It received an important message for transmission from Portland, Or., to Seattle. There was a competing line between these two points. The line of the defendant was down, and had been for more than an hour previous to the receipt of the message. The defendant did not know where it was down, nor how long it would require to put it in order. It did not notify the sender that its line was down, nor make any attempt to send the message by the competing line. This was clearly a case of gross negligence, for which it, under all the authorities, would have been liable.

In *Grinnell v. Telegraph Co.*, 113 Mass. 306, the language of *Ellis v. Telegraph Co.* upon this point was held to be *obiter dicta*, and was disapproved. The court in that case, replying to this contention, say:

" The conclusive answer to it is that the plaintiff, having omitted to fulfill the condition on which alone, by the terms of the express contract between the parties, he could recover for any mistake in transmission more than the amount of his original payment, cannot be permitted to prove that his own failure to fulfill his contract did not affect the result."

The precise question was again before that court in *Clement v. Telegraph Co.*, 137 Mass. 466, where the message had reached the receiving office, and been intrusted to a messenger boy for delivery. The language of the court is as follows:

" The only negligence shown in this case was an unexplained delay in delivering the message on the part of the messenger boy, to whom it was, after its receipt, intrusted for delivery. It may be that the company might be guilty of some fraudulent or gross negligence in trans-

mitting or delivering a message, so that it would not be protected by its regulation from liability for the actual damages, though in excess of the sum stipulated. But the negligence of the messenger boys in delivering messages was plainly contemplated by the parties when they entered into the stipulation, and there are no principles of public policy which should prevent the company from stipulating that it will not be responsible for such negligence, beyond a fixed amount, unless it receives a reasonable compensation for assuming further responsibility."

This case is cited with approval in *Primrose v. Telegraph Co., supra.*

The question now before us is not one of neglect to transmit at all, nor of failure to deliver after receipt at the place of destination. It is a case of delay in transmission. It is obvious that such delays may occur from various causes. There is as much reason in stipulating against such delays as there is against inaccuracies in the message. The demand for its repetition is a notice of its importance and the necessity for promptness, additional to the language of the message itself. If the order to repeat had been contained in the message, we cannot say that the operator at Detroit, upon finding that he could not get the office at Dearborn, would not have at once telegraphed to the plaintiff that fact. However that may be, this delay was one against which he contracted, and against which, under the authorities above cited, the parties had the clear right to do so.

The defendant provided suitable instruments and competent operators. The failure of the temporary operator at Dearborn to connect his instrument with its line for a few hours is not "gross negligence," within the definition adopted by this Court. *Denman v. Johnston*, 85 Mich. 387; *Frost v. Railroad Co.*, 96 Id. 470. There was no intentional wrong, and no act done to cause the delay, with knowledge of the plaintiff's message. It appears that about one message, every two days, came to Dearborn.

Defendant could not keep an operator there at its own expense. It was therefore entirely proper for it to employ the railroad operator to attend to its business at this and similar stations. But it cannot defend upon the ground that the business was small. Having held itself out as ready to do business at these stations, the duty imposed was the same as though it had an operator of its own. The act complained of, however, was not attended by any willful misconduct, or reckless disregard of the rights of plaintiff, and cannot, therefore, be held to constitute gross negligence.

The judgment must be reversed, and a new trial ordered.

The other Justices concurred.