JOHN WANN, Respondent, *v.* THE WESTERN UNION TELE-GRAPH COMPANY, Appellant.

*Bailments— Carriers.*—Telegraph companies, whether regarded as common carriers or bailees, may specially limit their liabilities, subject to the qualification that they will not be protected from the consequences of gross carelessness. A telegraph company may reasonably require that, for the purpose of avoiding errors, the message shall be repeated, or that the company shall not be liable for any error in the transmission of the message.

*Appeal from St. Louis Court of Common Pleas.*

This action was instituted to recover damages for alleged carelessness of the Western Union Telegraph Company in transmitting a dispatch for plaintiff, from St. Louis to New York city. It was admitted on the record that the defendant was a duly incorporated company, doing business under the "Act concerning telegraph companies" (R. C. 1855, ch. 156). The answer denies carelessness on the part of defendant, and sets up a failure of the plaintiff in complying with the published regulations of the company, which, among other things, require the sender of an important message to

pay an additional price of one-half the usual rates for repeating the same. The answer also sets out the published regulations of the company, and charges that the plaintiff had full knowledge of said regulations, and contracted with reference to the same.

Plaintiff's knowledge of these regulations was admitted on the trial.

On the day previous to the transmission of the message in question, Messrs. McAndrew and Wann, of New York, telegraphed the plaintiff as follows:

"SEPTEMBER 17, 1862.

"Shall we forward salt by steam or sail on Lake? Can buy same quanity of each in time. Not much change in freight since you were here. Reply at once.

(Signed) McANDREW & WANN."

In reply, the plaintiff sent the dispatch in question, to-wit:

"ST. LOUIS, September 18, 1862.

"Ship by sail immediately. Take 5,000 Liverpool, three thousand Turk's Island.

(Signed) JOHN WANN."

When this dispatch reached McAndrew & Wann in New York, it read: "Ship by rail immediately," etc. That is, the word "rail" was substituted for the word "sail" in the original dispatch.

On the following day, McAndrew and Wann telegraphed plaintiff as follows:

"SEPTEMBER 19, 1862.

"Have bought 5,000 Liverpool, one twelve half and three thousand Turk's. About 75 four months, forwarding by rail to Chicago.

(Signed) McANDREW & WANN."

Five days after this last dispatch, plaintiff telegraphed McAndrew & Wann as follows:

"ST. LOUIS, September 24, 1862.

"Don't ship any salt by railroad and steam, only canal and lake.

(Signed) JOHN WANN."

The only evidence introduced, on the trial, to sustain the charge of carelessness of the company was, that, in the message as delivered in New York, the word "rail" was substituted in the place of the word "sail" in the original one. On the other hand, it was in evidence that the plaintiff did not reply to the dispatch of McAndrew & Wann of the 19th September, advising him of the shipment "*by rail to Chicago*," until the 24th September, and that plaintiff's dispatch of the 18th September (the one in question) was not properly responsive to the question of his correspondents in New York—"Shall we forward by *steam* or *sail on Lake?*" The defendant proved by experts, that the telegraph apparatus used by the company in transmitting the dispatch was in complete order; that the system used by said company was the one known as Morse's system, and the most perfect in use, and that the employees of the company who acted as operators were skilful and experienced.

It was admitted as proved that the ordinary price for said dispatch to New York, ($1.92,) was paid on delivery, but not the additional price for repeating the dispatch (which would be 96 cents additional).

The main question in the case arose on instructions given and refused. The one given at the instance of the plaintiff is as follows:

"The jury are instructed that defendants are responsible as common carriers, for any negligence or carelessness in copying or transmitting the plaintiff's message, and are responsible for such damages as plaintiff may have suffered, if any, by reason of defendants having carelessly or negligently transmitted such message, and the defendants are not excused from their said responsibility though the plaintiff may have had notice of the terms claimed by the defendants, as set forth on the tops of the papers used by them in the writing and sending of dispatches."

The defendants' instructions, being the converse of this, were refused.

The jury found for the plaintiff, and judgment was rendered against defendants for $1,085.44.

*Knight*, for appellant.

I. The court below clearly erred in declaring the law. The defendant was not a common carrier, or liable as such. Telegraph companies come neither within the *term*s or meaning of the rule. They carry no *goods*. They have no lien for freight; they have possession of nothing which they can convert to their own use. They have no means of ascertaining the value of the dispatch, or whether it has any value or not. It may have no general value, and still have great value to the parties interested. It may be in cypher and unintelligible to the employees of the company, and yet be worth a million to the parties. They have no right to demand a disclosure of its nature or importance. They have none of the *general* rights of carriers. (Jones on Bail., App. p. 24 et seq.; Edw. on Bail. 353 ; Sto. on Bail. § 15, pp. 566–7.)

They are not *eo nomine* classed among bailees of that description. The contract *locatio operis mercium vehendarum* cannot in the nature of the case appertain to them. (2 Kent, 599.)

The language of all the books unites in describing the common carrier as one who carries *goods*, and has the custody of goods ; has a special interest in the goods carried ; has a lien on the goods for freight, and may sell the goods to satisfy his lien. (Chit. on Car. 15.)

In consideration of these peculiar rights, he was originally held to the strictest account, even as an *insurer* against inevitable accident. (1 Term, 33 ; 4 Dougl. 287 ; 3 Esp. 131.)

More modern cases have relaxed the rule so far, that it has been said they have unsettled the law on the subject. (Walk. Am. Law, 453 & note ; 1 Am. L. Reg., 65 et seq.; 4 Sandf. R. 136.)

Courts have not only relaxed the rule, but have restricted it in its application. Hence the better opinion seems to be, " that the strict rule of the common law liability being harsh,

courts will not extend the rule when the reason for it has failed." (2 Peters, S. C. 150.) Hence it does not extend to carrying passengers (*ibid*); nor to carrying baggage beyond an ordinary amount (9 Wend. 85); nor to express companies (19 Barb. 577; 5 Sandf. R. 180; 18 Barb. 500; 24 Barb. 533; 2 Duer, 471); nor to wharfingers (7 Cow. 497); nor to forwarders (6 Hill, N. Y. R. 158; 4 Dumf. & East, 583; 8 Cow. 223; 2 Smith [E. D.] 195; 12 Johns. 232.)

So we find, so far as the subject has undergone direct judicial investigation, the weight of authority is largely against applying the common carrier liability to telegraph companies. (Birney v. York & W. P. Tel. Co., 18 Md. 341, [1862]; Camp v. W. U. Tel. Co., 1 Metcalf, R. 164; Shields v. Wash. Tel. Co., 9 W. Law Jour. 283; McAndrew v. Electric Tel. Co., 33 Eng. L. & Eq. 180; Drybury. N. Y. & W. P. Tel. Co., 35 Penn. 298.)

This last case was one based on the *misfeasance* of an agent of the company and not strictly in point, but Judge Woodward, in delivering the opinion, cites the Camp case (1 Metc. R. 164), and distinguishes it from the case before him, and without dissenting from the doctrine of that case, holds this language : " Though telegraph companies are not, like *carriers, insurers* for the safe delivery of what is entrusted to them, their obligations, so far as they reach, spring from the same sources—the public nature of their employment, and the contract under which the particular duty is assumed."

[*a.*] The only adjudicated case directly holding telegraph companies liable as common carriers, it is believed, is the case of Parks v. Alta Cal. Tel .Co. (13 Cal. R. 422.) This case was decided in 1859, and has no reference to previous adjudications—nor does it seem to be well considered. No reference appears to have been made to the Cal. statute on the subject, either by counsel or court.

On the other hand, both the Birney (Md.) and the Camp (Ky.) cases appear to have been ably argued by counsel, and well considered by the courts. The English authority above

cited (33 Eng. L. & Eq. 180) has reference mainly to the construction of the statute (16 & 17 Vic. C. 103) which required the telegraph company to "receive and send messages, subject to reasonable regulations to be adopted by the company;" and the question in that case was, whether the regulations of the company were reasonable. The court decided in the affirmative. In arriving at that conclusion, the several judges compared the liability of telegraph companies to that of common carriers, and asserted that even common carriers might limit their liability by reasonable regulations. Our statute is *in terms* more favorable to the company than the English statute. It requires the company " to receive and transmit " only upon payment or tender of the usual charge, according to the regulations of the company." (R. C. 1855, p. 156.)

[*b.*] In a recent Canadian case, it was held that the telegraph company was not liable for transmission of a message beyond their line, although they had received payment therefor, on the ground that they had limited their liability by notice. (Stevenson v. Montreal Tel. Co., 16 Upper Can. 530.)

[*c.*] In another case, it was held that the same company were not liable to damages for failure to deliver a message to another company to be forwarded, for the purpose of accepting a proposed contract, on the ground that no legal contract could be created in that way. (Kinghorne v. Montreal Tel. Co., 18 U. C. 67.) If contracts can be created in this way, they are certainly distinguishable from those made by mail. (Trevor v. Wood, 41 Barb. 255.)

[*d.*] It has long since been held that the carrier of the mails is not liable as a common carrier. And as it was said by the eminent judges in the celebrated postoffice case of Lane v. Cotton (1 Salk. 17), that " its office is for intelligence and not for insurance"; so we say of the telegraph, " its office is for *intelligence* and not for *insurance*."

II. But the court below clearly erred in assuming, in the instruction given, that the defendant could not limit its liability, and by refusing the instructions moved by the de-

fendant on this point. The law is now well settled that even a carrier may limit his liability, either by express contract or notice brought home to the party. (3 How, 344; Ang. Com. Car. 223 et seq.; Edw. on Bail. 472–83; 4 Sandf. 136; 6 Barb. 344; 9 Wend. 85; 23 Vt. 206; Walk. Am. Law, § 182, p. 453, & note 3; 2 Comst. 210; 9 Barb. 191.) The doctrine of these cases can no longer be successfully controverted.

III. The court bolow erred in assessing the damages at $1,085.44.

The proper rule of damages in such cases is, "that only such damages are recoverable as may reasonably be supposed to have been in contemplation of the parties at the time they made the contract, as a probable result of the breach of it." (Hadley v. Baxendale, 9 Exch. R. 341; Griffin v. Colver, 2 Smith, 16 N. Y. 489.) As there was no disclosure in this case of the nature or importance of the message, the only damages that could reasonably have entered into the contemplation of both parties at the time of the contract was the amount paid for its transmission. (Landsberger v. Magnetic Tel. Co., 32 Barb. 532; Shields v. Wash. Tel. Co., 9 W. Law Jour. 283.)

IV. The court below erred in refusing the second instruction moved by defendant. There was evidence of *laches* on the part of the plaintiff: 1. In not sending an *intelligible reply*, *responsive* to the inquiry of his correspondents at New York; 2. In not replying at once to the telegram of his correspondents, dated September 19, advising him of their "having forwarded by rail to Chicago." This he failed to do until September 24. There is no law better settled than that if the plaintiff's negligences contributed to the injury complained of, he cannot recover. (2 Taunt. 314; 4 Car. & Payne, 554; 34 Mo. 55.)

If the appellant is to be held as an *insurer*, as is contended by the opposing counsel, the company will of course be forced, in self-defence, to charge the additional rate of insurance in *all* cases, whether the message be one of importance or not.

This burden, then, will fall on the public at large, instead of falling where it should, to-wit, on him who sends an important message. While, therefore, the settling of the question involved, on sound principles of law, is important to the appellant, it is of still greater importance to the general public.

*Hill & Jewett*, for respondent.

From the three instructions given to the jury, it appears that the question was put distinctly to the jury, upon the ground that the defendants were guilty of negligence and carelessness, or want of ordinary care and diligence in transmitting the message. There is no question of " limitation of liability," or " terms," in the case. In their " terms," the defendants do not undertake to exempt themselves from the responsibility of ordinary care. They only say they will not be responsible for mistakes; that is, such mistakes as ordinary care and diligence cannot guard against. The law does not allow these defendants (if they would) to protect themselves from the consequences of negligence in transmitting messages. The case finds that the defendants are a corporation under the statutes of this State. (R. C. 1855, p. 1519.) Though there is some difference in the authorities as to whether these companies are subject to all the liabilities of common carriers, we think the weight of authority is, that they are, and that the reason of the thing is to the same effect. But there is no intimation in any of·them, that they are not responsible when guilty of negligence, and many of them refer to that point as too plain to be talked about.

The instruction asked by defendant, and refused, as to the right to limit their liability, was properly refused, because it was an immaterial issue, and was not before the jury in that shape, as the whole question was put upon the ground of negligence, and all the advantage the defendant could have from the knowledge the plaintiff had of their " terms," was given to them by the last instruction given to the jury at defendants' request.

Common carriers cannot limit their liabilities by notice,

but may by special contract. (11 N. Y. 484, Dorr v. N. J. & N. Y. S. N. Co.)

WAGNER, Judge, delivered the opinion of the court.

This was an action instituted to recover damages for alleged carelessness of the Western Union Telegraph Company in transmitting a dispatch for plaintiff from St. Louis to New York city. The dispatch, as sent by plaintiff to his correspondent in New York, ordered them to ship to him at St. Louis, certain quantities of salt by " sail," and when it reached New York and was delivered it read, ship by " rail;" that is, the word "rail" was substituted for the word "sail" in the original dispatch. Accordingly a large proportion of the salt was forwarded by railroad instead of by canal and lake, as was originally intended by the dispatch. The shipping by railroad was much more expensive than by water, and the action was brought to recover the difference between the two modes of transportation. A judgment was rendered in the court below, for the plaintiff, for the sum of one thousand and eighty-five dollars and forty-four cents, and to reverse this judgment the case is brought here by appeal.

The defendant resists the recovery on the ground that all dispatches were sent over its lines on the following conditions, which, it appears, plaintiff had knowledge of:

" Terms and conditions on which messages are received by the company for transmission.—The public are notified that, in order to guard against mistakes in the transmission of messages, every message of importance ought to be repeated, by being sent back from the station at which it is to be received to the station from which it is originally sent. Half the usual price for transmission will be charged for repeating the message ; and, while this company will, as heretofore, use every precaution to insure correctness, it will not be responsible for mistakes or delays in the transmission or delivery of repeated messages beyond an amount exceeding five hundred times the amount paid for sending the message, nor will it be responsible for mistakes or delays in the trans-

mission of unrepeated messages, from whatever cause they may arise, nor from delay arising from interruptions in the workings of its telegraphs, nor for any mistakes or omissions of any other company, over whose lines the message is to be sent to reach the place of its destination. All messages will hereafter be received by this company for transmission subject to the above conditions."

The message was not ordered to be repeated.

Our statute, under which the company is incorporated, declares that it shall be the duty of the company, "on payment or tender of the usual charge, according to the *regulations* of the company, to transmit all dispatches, with impartiality and good faith, in the order of time in which they are received," &c. And such companies are made liable "for special damages occasioned by the failure or negligence of their operators or servants, in receiving, copying, transmitting or delivering dispatches." (R. C. 1855, p. 1521, §§ 5–6.) The court has never before been called on to construe this statute, and the transmitting and communicating intelligence by means of the electric telegraph being of comparatively recent invention, but few adjudications have been made in respect to the liabilities of telegraph companies. In California the court seems to have applied the doctrine governing the liability of common carriers to telegraph companies. But in the California case, as well as the Maryland case to which reference has been made, there was not merely negligence, but an entire omission on the part of the operators of the companies to perform their duties. In the former, the dispatch was not sent until the day after it was received, in consequence of which delay the plaintiff lost a debt; in the latter, the dispatch was forgotten, and was not sent at all. But the Maryland court repudiates the doctrine, that a telegraph company is a common carrier, and assumes that it is a bailee, and that a party sending messages by telegraph, knowing that the engagements of the company are controlled by certain rules and regulations, engrafts them in contract of bailment, and is bound by them; and that rules ex-

empting the company from liability for the non-transmission
and non-delivery of unrepeated messages do not apply to a
case where no effort is made by the company or its agents to
put a message on its transit.

In the Kentucky case, the telegraph company had publish-
ed notice in the precise language used by the defendant here
and copied in this opinion.    The plaintiff sent a message
over its lines without ordering it to be repeated, or paying
for having the same done.    A mistake occurred in its trans-
mission, whereby he lost one hundred dollars.    The court
held that the condition was reasonable and the defendant
was not liable.    The case of McAndrew v. The Electric Tele-
graph Company (1 Com. Bench, 3) is in point, and is ably
reasoned.    The statute 16 and 17 Victoria embodies a pro-
vision similar to ours in regard to telegraph companies, and
the company there had given notice of which the one here is
almost an identical transcript.    The plaintiff delivered an
unrepeated message to be transmitted over the company's
line, directing a certain ship to proceed to Hull.    By mistake,
when it was received, it directed the ship to proceed to
Southampton.    On account of this mistake the plaintiff was
injured in disposing of his cargo, and brought his action to
recover damages; but the court said the condition was reason
able, and there was no objection to the company availing it-
self of the same protection that other persons in a similar
position are entitled to do by law, by limiting its liability by
fair    and    reasonable    conditions, notice of which is duly
brought home to the parties contracting with it.

Whether we regard telegraph companies as common car-
riers or as bailees, we see no reason why they may not spe-
cially limit their liabilities, subject to the qualification, how-
ever, that they will not be protected from the consequences
of gross negligence.  Deny them this right and they will be
utterly unable to protect themselves against the hazards and
risks which are incident to the business in which they are
engaged.    We see nothing unreasonable in their declaring
they will not be responsible for unrepeated messages.    We

think this description of liability comes within the intention of the regulations provided for in the statute. The system of telegraphing, however perfect it may be, is seriously affected by atmospheric causes, which are uncontrollable; and if a man wants to send a message of an important character, prudence and wisdom would seem to dictate that he should have it repeated, in order to be assured of its correct transmission. And as the repetition imposes additional labor, it is surely justice that an enhanced price should be paid. If the company undertake to insure the accuracy of the message, and assumes additional risk, it should be paid accordingly.

The message sent by the plaintiff was one of importance; he could have demonstrated its perfect correctness by having it repeated at a trifling sum, and he was fully cognizant of the regulations of the company.

The first, third, and fourth instructions prayed for by defendant should have been given, and the last paragraph of the instructions given for the plaintiff should have been refused.

The judgment is reversed, and the cause remanded. Judge Holmes concurs; Judge Lovelace absent.