38 685
39 99

# THE WESTERN UNION TELEGRAPH COMPANY V. GEORGE W. HOWELL.

TELEGRAM; *Gross Negligence of Company; Finding, Supported.* When a message is delivered to a telegraph company for transmission, very plainly written, and could not be mistaken by any person possessing ordinary eyesight who would examine it with ordinary care, and there is a mistake in the transmission, and a mistake is feared by the person who received it, and at his request the agent at the place where it is received inquires at two relay stations if the message is correctly sent, and is assured from both stations that it is, and there is no explanatory or exculpatory evidence offered on behalf of the telegraph company, a finding of the trial court that the company is guilty of gross negligence is supported by sufficient evidence.

*Error from Atchison District Court.*

ACTION brought by *Howell* against *The Western Union Telegraph Company,* to recover $200 damages for negligently and carelessly making a mistake in the transmission of a telegram sent by plaintiff from Omaha, Nebraska, to Downs, Kansas. Trial by the court, at the June term, 1886. The court made the following special findings of fact and conclusions of law:

"CONCLUSIONS OF FACT.

"1. On, and before, and after April 8, 1886, the plaintiff was the owner of a team of horses of about the value of $800, which team was then at his place of residence at Downs, Osborne county, Kansas, where he was engaged in the lumber business with Howell Bros. On said day he was at Omaha, Nebraska, and desired to reach his home at Downs, by way of Salem, in Jewell county, Kansas. He went to the transmitting office of the defendant at Omaha, and wrote upon a blank furnished by defendant, a message, which, together with the printed matter thereon, reads as follows:

"FORM No. 2.]
"THE WESTERN UNION TELEGRAPH COMPANY.

"All messages taken by this company are subject to the following terms:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addi-

tion. It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any un-repeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any repeated message, beyond fifty times the sum received for send-ing the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination.

"Correctness in the transmission of message to any point on the lines of this company can be insured by contract in writing, stating agreed amount of risk, and payment of premium thereon at the follow-ing rates, in addition to the usual charge for repeated messages, viz.: One per cent. for any distance not exceeding 1,000 miles, and two per cent. for any greater distance. No employé of the company, is author-ized to vary the foregoing.

"No responsibility regarding messages attaches to this company until the same are presented and accepted at one of its transmitting offices; and if a message is sent to such office by one of the company's messengers, he acts for that purpose as the agent of the sender.

"Messages will be delivered free within the established free-delivery limits of the terminal office. For delivery at a greater distance, a special charge will be made to cover the cost of such delivery.

"The company will not be liable for damages in any case where the claim is not presented in writing, within sixty days after sending the message.                                    NORVIN GREEN, *President.*

"THOMAS T. ECKERT, *General Manager.*

| Receiver's No. | Time Filed. | Check. |
| --- | --- | --- |
|  |  |  |

"Send the following message, subject to the ⎱
above terms, which are hereby agreed to.   ⎰        'April 8, 1885.

"'To Howell Bros., Downs, Kansas: Have my team and a double car-riage in Salem by Thursday noon.        GEORGE W. HOWELL.'

"Read the notice and agreement at the top.        | 12 | paid.

"All of said matter was printed on said blank furnished by the defendant, except that commencing with the date and end-ing with the signature of the plaintiff.

"2. On the afternoon of the same day, the agent of the defendant at Downs, Kansas, delivered to the manager of the business of said Howell Bros., the telegraphic message in words and figures following, to wit:

"FORM No. 1.]
"THE WESTERN UNION TELEGRAPH COMPANY.

"This company transmits and delivers messages only on conditions limiting its liability, which have been assented to by the sender of the following message. Errors can be guarded against only by repeating a message back to the sending station for comparison, and the com-pany will not hold itself liable for errors or delays in transmission or

delivery of unrepeated messages, beyond the amount of tolls paid thereon, nor in any case where the claim is not presented in writing within sixty days after sending the message.

"This is an unrepeated message, and is delivered by the request of the sender, under the conditions named above.

"Thos. T. Eckert, *General Manager.*    Norvin Green, *President.*

| Number. | Sent by. | Rec'd by. | Check. |
|---------|----------|-----------|--------|
| M. S. | C. O. | Q. | 12 paid. |

Received at 4.06 P.M.

Dated Omaha.                                          'April 8, 1885.

" ' *To Howell Bros., City:* Have my team and a double carriage in Salina by Thursday noon.                    Geo. W. Howell.'

"3. Said manager, doubting the correctness of said dispatch, requested the defendant's agent at Downs to ascertain at Atchison and Kansas City if the message as delivered was correct, and said agent of the defendant telegraphed to the relay offices at Kansas City and Atchison on the same evening, and was informed from both of said offices that the body of the dispatch read as follows, namely : 'Have my team and a double carriage in Salina by Thursday noon.—George W. Howell.'

"4. Said manager thereupon hired a double carriage at Downs, and sent Charles Page, a colored man, who was in the employ of plaintiff at Downs, with said team and carriage to Salina, Kansas, with instructions to get there if possible by noon of the next day to meet the plaintiff. Said Charles Page started the same evening, and drove as far as Beloit, in Mitchell county, Kansas. It rained that night, but next morning said Charles Page started with said team and carriage from Beloit to Salina, in Saline county, Kansas, and reached there about three o'clock in the afternoon of April 9th. The distance traveled from Downs to Salina was over a hundred miles, and the team was very much injured by the overwork upon said journey. The distance from Downs to Salem is about thirty miles.

"5. Said Charles Page having been informed of the mistake after reaching Salina, he remained there four and a half days for his team to recuperate, and he then drove back to Downs by easy stages.

"6. The message as delivered to defendant's agent at Omaha was plainly written, and the word 'Salem' was very plainly written. It could not have been mistaken for Salina, nor for

any other word than Salem, by any person possessing ordinary eyesight, who would examine it with the slightest care. The plaintiff prepaid the defendant's charge for an unrepeated message, and no more. Neither Howell Bros. nor their manager, nor the defendant's agent at Downs, nor at Kansas City, nor at Atchison, inquired of the defendant's agent at Omaha whether the message as received at Downs was correct or not.

"7. The hotel and feed bills incurred by said Charles Page on said trip were fully $20. The use and hire of said carriage was $10, and the wages of said colored man on said trip were fully $7. The team was so much injured by the drive that it was not fit for use for two or three months, and one of said horses has never recovered from the injury; the damage to said team by said excessive drive was at least $120.

"8. On May 12, 1885, the plaintiff caused to be duly served upon the defendant, through the manager of its business at Atchison, Kansas, a demand in writing for damages, by reason of the foregoing acts, giving a full statement of the items of the plaintiff's claim, which items correspond with those set forth in 'Exhibit E,' annexed to plaintiff's petition. Said demand also contained an intelligent statement of the nature of the plaintiff's claim, and of the difference between the message as delivered by plaintiff at Omaha for transmission, and as delivered to Howell Bros. at Downs, Kansas, after transmission, but the defendant has not paid said claim, nor any part thereof.

"9. The items of damage referred to in conclusion of fact 7 are such as may reasonably be supposed to have been in the contemplation of both parties to the suit at the time the message was sent, as the probable result of a failure of the defendant to properly transmit it, as to where the plaintiff was to be met with his team.

"10. The only evidence of negligence is such as arises from the foregoing facts, but the failure of the defendant to properly transmit the message, as to the place where the plaintiff was to be met with his team, was, under the circumstances, gross negligence of the defendant."

"CONCLUSIONS OF LAW.

"1. The printed conditions upon said blank do not relieve the defendant from the payment of damages resulting from the negligence of its agents and operators, nor limit the recovery to a nominal amount.

"2. The defendant is liable to the plaintiff, and the plaintiff is entitled to judgment for the sum of $157.

"3. The defendant is also liable for costs of suit."

New trial denied; judgment in accordance with the foregoing findings and conclusions was rendered for the plaintiff. *The Company* brings the case to this court.

*Waggener, Martin & Orr*, for plaintiff in error.
*Smith & Solomon*, for defendant in error.

Opinion by SIMPSON, C.: The main features of this case are similar to those of *Telegraph Co. v. Crall*, just decided. All that is said in that case denying the power of the telegraph company to limit its liability by contract, so as to relieve itself against acts of gross negligence committed by its agents and employés, applies with equal force to the facts appearing in the record of this case. The point most vigorously contested however in this case, not arising in the other, grows out of the finding of the court that "The only evidence of negligence is such as arises from the foregoing facts, but the failure of the defendant to properly transmit the message, as to the place where the plaintiff was to be met with his team, was, under the circumstances, gross negligence of the defendant." The other or foregoing facts found were, that "the message as delivered to the defendant's agent at Omaha was plainly written, and the word 'Salem' was very plainly written; it could not have been mistaken for 'Salina,' nor for any other word than 'Salem,' by any person possessing ordinary eyesight, who would examine it with the slightest care;" and the further finding: "Said manager, [meaning at Downs,] doubting the correctness of said dispatch, requested the defendant's agent at Downs to ascertain at Atchison and Kansas City if the message as delivered was correct, and said agent of the defendant telegraphed to the relay offices at Kansas City and Atchison on the same evening, and was informed from both of said offices that the body of the dispatch read as follows, namely:

44 — 88 KAS.

'Have my team and a double carriage in Salina by Thursday noon.— GEORGE W. HOWELL.' "

It is said by counsel for plaintiff in error, that the only evidence of negligence as found by the court below is the mere fact that said message was delivered reading "Salina" instead of "Salem," and inasmuch as the message was not a repeated message, the burden was upon Howell to show negligence, other than such as might be inferred from the mere error in the transmission of the message. The cases of *White v. Telegraph Co.,* 14 Fed. Rep. 710, and *Becker v. Telegraph Co.,* 11 Neb. 87, are cited and relied on to establish the proposition.. The authorities on the other side are numerous, and are collected in the opinion of Judge HOLT in the Crall case.

Counsel are mistaken in their supposition, however, that the only evidence of negligence is the mere fact of mistake in the word "Salina" for "Salem." There are two other facts found that demonstrate the negligence of the telegraph company. The first is, that the word "Salem" was very plainly written, so plainly written that it could not have been mistaken for "Salina," or any other word, by any person possessing ordinary eyesight, who would examine it with the slightest care. This is equal to a finding that the operating agent at Omaha did not exercise the slightest care in the transmission of the message. In the absence of the finding that the word "Salem" was very plainly written, it might with some propriety be urged that the words are similar in appearance when hurriedly written, and the mistake might easily occur in a press of business. But the finding disposes of all such theories. There is a mistake, but the message is very plainly written, and the mistake could not occur with the slightest care. Here is something in addition to the mere fact of mistake. Then again, the manager at Downs feared a mistake, and had the agent of the company ask both at Atchison and Kansas City for a verification of the message. This was notice to the company that a mistake was feared, but from both places came assurances that the message as delivered was correct; that Salina was

*Telegram; negligence of company in transmission.*

meant, and not Salem. This was an additional act of gross carelessness upon the part of the company. It may be that it was not obliged to repeat the message, or to give additional assurances of its freedom from mistake, but having done so, the company was obliged to ascertain just what the original message was, and report accordingly. If it was content to rely on a report from the relay stations, and not to inquire at the office from which the message was sent, it ought to be held responsible for an omission of duty in that respect. So the case stands thus; there is the fact of mistake; the fact that the words were very plainly written; the fact that a mistake was feared and its attention called to it, and after inquiry it persisted in the mistake: and these are sufficient to support the finding of gross negligence on the part of the company.

It is recommended that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.