REED *et al.* v. WESTERN UNION TELEGRAPH COMPANY,
*Appellant.*

Division Two, November 20, 1896.

1. **Negligence**: TELEGRAPH COMPANY: ERROR IN TRANSMISSION OF MESSAGES. A telegraph company can not by contract exempt itself from liability for the negligence of its servants in the transmission of messages. (*Wann v. Telegraph Co.*, 37 Mo. 472, overruled.)

2. ———. A distinction between negligence and gross negligence does not exist in this state.

3. ———: TELEGRAPH COMPANIES: CARE REQUIRED. Telegraph companies are required to have suitable instruments and competent servants and to see that the service rendered to their patrons is performed with the care and skill requisite in their peculiar undertaking.

4. ———: ———: ERROR IN TRANSMISSION OF MESSAGE: PRIMA FACIE CASE. In an action against a telegraph company for damages resulting from errors in the transmission of a message, it was shown that the message was not transmitted as it was written and that the person to whom it was sent acted upon it as received. *Held*, that a *prima facie* case of negligence was made, placing the burden of disproving it on the defendant.

5. ———: ———: ———: LEX LOCI CONTRACTUS. Where in such action it appeared that the message was delivered to defendant company at its office in the state of Iowa for transmission to a place in Missouri, the laws of Iowa relating to the liability of the company on the contract will govern.

6. ———: ———: ———: PROXIMATE CAUSE. Plaintiff's agent living in Iowa gave to a telegraph company a message directed to his agent in Missouri stating that land owned by plaintiff could be sold for $1,300 cash. The message as received by plaintiff gave the price offered as $1,900, and she immediately telegraphed her acceptance and transmitted a deed by mail. Upon receipt of plaintiff's answer accepting the price offered, the agent concluded the contract of sale, at $1,300. *Held*, that the negligence of the company was the proximate cause of the loss of the difference between the price received and the market value of the land.

7. ———: ———: ———: MEASURE OF DAMAGES. The proper measure of plaintiff's damage is the difference between the sum received for the lot and its market value.

8. **Practice**: INTEREST: WAIVER. The right of plaintiff to recover interest having been conceded on the trial, the allowance can not afterwards be successfully assigned as error.

*Appeal from Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

AFFIRMED.

*Karnes, Holmes & Krauthoff* for appellant.

(1) The court erred in admitting in evidence the statute of the state of Iowa, and Mr. Stiles' oral testimony as to the unwritten law of that state relative to the liability of telegraph companies; and also erred in giving the third, fourth and fifth instructions on behalf of the plaintiffs. The telegram in question was sent from Cedar Rapids, Iowa, to Kansas City, Missouri. It was, therefore, an interstate transaction, and not subject to the laws of the state of Iowa. *Stanley v. Railroad*, 100 Mo. 435; *Railroad v. Sherwood*, 19 S. W. Rep. 455; 84 Texas, 125; *Otis v. Railroad*, 112 Mo. 622; *W. U. Tel. Co. v. Pendleton*, 122 U. S. 347. (2) It follows that the validity of the conditions under which the message in controversy was sent, must be determined by the rule or decision announced by the supreme court of Missouri, namely, that the provision limiting liability for errors and mistakes in unrepeated messages is valid. *Wann v. W. U. Tel. Co.*, 37 Mo. 472, and cases cited; 2 Shearm. & Redf. on Neg., sec. 553, p. 405; *Kiley v. W. U. Tel. Co.*, 109 N. Y. 231; *W. U. Tel. Co. v. Stevenson*, 128 Pa. St. 442; *Thompson v. W. U. Tel. Co.*, 64 Wis. 531. (3) There was neither allegation nor proof of gross negligence on the part of the defendant, nor did the plaintiffs' instructions predicate their recovery upon the presence of this element. Some of those who differ with the supreme court of Missouri, and others

upholding the validity of the stipulation in question, affect not to understand what is meant by the term gross negligence. But those who have examined the question have no difficulty in determining that the phrase is used in the sense of willful mistake or fraud. *Ellis v. Am. Tel. Co.*, 13 Allen, 226; *Redpath v. W. U. Tel. Co.*, 112 Mass. 71; *Hart v. W. U. Tel. Co.*, 66 Cal. 579; *Breese v. U. S. Tel. Co.*, 45 Barb. 274. Gross negligence is "when a man does something recognizing the duty of using care, and of set purpose abstains from using such care." Beven on Neg., p. 63 *n*. (4) The court erred in declaring the measure of damages in the plaintiff's first instruction, and in refusing the fourth, fifth, sixth, seventh and eight instructions for the defendant. *First.* The same rule prevails in actions against telegraph companies that governs the recovery of damages in ordinary cases; the damages must be limited strictly to those which are proximately caused by the negligence complained of, and can not include those which are remote. *W. U. Tel. Co. v. Hall*, 124 U. S. 444; *Howard v. Stilwell Mfg. Co.*, 139 U. S. 199; *Cahn v. W. U. Tel. Co.*, 48 Fed. Rep. 810. *Second.* A well established and eminently just rule imposes upon a party injured or exposed to danger of injury from the act of another, however wrongful, the duty to actively exert himself to take steps to avoid or lessen the injuries, and to make exertions and incur reasonable expenses to that end. *Douglass v. Stephens*, 18 Mo. 362; *Fisher v. Goebel*, 40 Mo. 475; *Waters v. Brown*, 44 Mo. 302; *State ex rel. v. Powell*, 44 Mo. 436; *Haysler v. Owen*, 61 Mo. 271; *Eoff v. Clay*, 9 Mo. App. 176; *Harrison v. Railroad*, 88 Mo. 625; *Railroad v. McGrew*, 104 Mo. 282; *Alliance Trust Co. v. Stewart*, 115 Mo. 236. (5) The court also erred in giving the sixth instruction for the plaintiffs. Cases justifying such a rule proceed in utter disregard of the propositions, that a telegraph company is

not subject to the rules governing common carriers (*Leonard v. N. Y. Tel. Co.*, 41 N. Y. 544), and that the limit of liability for negligence is that the defendant shall be under a duty to the plaintiffs. There must be a duty as well as a breach, and that duty must be one to the person sustaining a loss and not one to some other person. *Roddy v. Railroad*, 104 Mo 234; *Bank v. Ward*, 100 U. S. 195; *Railroad v. Lawton*, 55 Ark. 428; *Curtain v. Somerset*, 140 Pa. St. 70; *Kahl v. Love*, 37 N. J. L. 5; *Ward v. Fagin*, 101 Mo. 669; *Yarnell v. Railroad*, 113 Mo. 570; *Robbins v. Jones*, 15 C. B. (N. S.) 221; *O'Brien v. Capwell*, 59 Barb. 497; Beven on Negl., pp. 337, 782, 783. (6) The person who employed the defendant, and as to whom it assumed a duty, was Hedges, who is conclusively held to have assented to the conditions of the contract under which the message was sent, and stood bound thereby. *Hill v. Tel. Co.*, 85 Ga. 425; *Grinnell v. Tel. Co.*, 113 Mass. 299; Gray on Tel., pp. 52, 53. (7) This court has placed the receiver's right of action (excluding statutory provisions without application to the interstate telegram at bar) purely upon the proposition that the contract was made by Hedges as the agent of plaintiffs, and for their benefit. *Markel v. W. U. Tel. Co.*, 19 Mo. App. 80. 2 Shearm. & Redf. Negl., sec. 543. (8) So that the plaintiffs, by claiming the right to sue, occupy the position and are bound by the conditions which would control the agent who acted for them in employing the defendant. *Ellis v. Harrison*, 104 Mo. 270; *Saunders v. McClintock*, 46 Mo. App. 216. *Ellis v. Am. Tel. Co.*, 13 Allen, 226; *Aikin v. Tel. Co.*, 5 S. C. 358. (9) The court erred in allowing a recovery of interest. The damages claimed were $600 and the recovery was for $700, the difference being because of the peremptory instruction that if the jury found for the plaintiffs

they should include interest in the assessment of damages. *Railroad v. Estill*, 147 U. S. 591, and cases cited.

*Kagy & Bremermann* for respondent.

(1)   The Iowa statute is not violative of the federal constitution.   *Connell v. Tel. Co.*, 108 Mo. 459. Besides, this question was not raised in the trial court and can not now be considered.   *Morgan v. Joy*, 121 Mo. 677; *Stone v. Hunt*, 114 Mo. 66.   (2) This case is distinguishable from that of *Primrose v. Tel. Co.*, 154 U. S. 1. In that case, *first*, the message was in cipher, *second*, it was not repeated, *third*, the company was not informed of its importance, and, *fourth*, the evidence showed only slight negligence.   Here the message was not in cipher and it was ordered to be and was repeated and the company was fully informed of its importance. (3) The evidence in this case shows such negligence as amounts to a willful disregard of duty, or if there be such a thing, gross negligence.   *Birkett v. Tel. Co.*, 61 N. W. Rep. 645.   (4) Where the verdict is manifestly for the right party on undisputed evidence there will be no reversal, and the court will not even examine the instructions nor reverse for errors which may have intervened. *Bank v. Bank*, 30 Mo. App. 271; *Vaughan v. Daniels*, 98 Mo. 230; *Bank v. Armstrong*, 92 Mo. 265.

GANTT, P. J.—This action is by a sendee or addressee of a commercial telegram against the telegraph company for negligence in its transmission whereby the plaintiff or sendee was misled into authorizing her agent to conclude a contract of sale of a tract of land for $1,300 when she believed she was obtaining $1,900 therefor.

Plaintiff's agent, Hedges, living in Cedar Rapids, Iowa, where her real estate was situated, delivered to

the defendant telegraph company, to be transmitted to plaintiff living in Kansas City, Missouri, the following message:

"CEDAR RAPIDS, IOWA, May 25, 1889.
"*James A. Reed, 306 Nelson Building, Kansas City, Mo.*

"Offered thirteen hundred cash, lot two houses near planing mill. Must hear immediately. Can't get more.

"GEORGE T. HEDGES."

The regular tariff rate was paid by Hedges.

This message when delivered was as follows:

"CEDAR RAPIDS, IOWA, May 25, 1889.
"*James A. Reed, 306 Nelson Building, Kansas City, Mo.*

"Offered *nineteen* hundred cash, lot two houses near planing mill. Must hear immediately. Can't get more.

"GEORGE T. HEDGES."

It will be noted the offer was changed in transmission from *thirteen* hundred to *nineteen* hundred dollars.

After requesting the operator and agent of defendant at Kansas City to verify the message on account of its importance and having been informed by the operator that he had verified it and she could rely upon it, plaintiff, ignorant of the error *in the message received*, on the same day, sent Hedges this telegram:

"Sell property for amount offered. Will send deed by Monday, 27th."

Armed with this power of attorney Hedges, the agent, also ignorant of the mistake in his message to plaintiff, and supposing he was authorized to sell the lot for $1,300, received a part payment of the purchaser thereon' and gave a written memorandum of the sale, agreeing to make the deed and deliver possession. On the twenty-seventh of May, 1889, plaintiff and her husband joined in the execution of a deed to the purchaser reciting a consideration of $1,900 and forwarded it to

Hedges who received it on the twenty-ninth. When Hedges received the deed he thought possibly there was a mistake owing to the insertion of $1,900 instead of $1,300 and suggested to the purchaser that they wait until he could write plaintiff, but the purchaser, threatenig a suit, he delivered the deed and accepted $1,300 which he remitted to plaintiff less his commission. Upon receiving the letter and being apprised for the first time of the mistake, plaintiff Mrs. Reed at once, and within the sixty days limited therefor, made claim for $600 damages which being refused by defendant, she commenced this action.

Defendant offered no evidence whatever to account for the mistake in the transmission of the message.

The company relies upon various alleged errors to reverse the judgment recovered by plaintiff.

I.   It is earnestly insisted by defendant that its liability is limited by the following stipulation made by it with plaintiff's agent when it received and undertook to transmit the message:

"All messages taken by this company are subject to the following terms:   To guard against mistakes or delays the sender of a message should order it *repeated;* that is, telegraphed back to the originating office for comparison.   For this, one half the regular rate is charged in addition.   It is agreed between the sender of the following message and this company, that said company shall not be liable for mistakes or delays in the transmission or delivery or for nondelivery of any *unrepeated* message *whether happening by negligence of its servants* or otherwise, beyond the amount received for sending the same."

It is agreed that this was an unrepeated message.

The position of defendant is that the stipulation limiting its liability for errors and mistakes in the transmission of said message is valid.   It goes further

and asserts it is not even liable for the negligence of its operators in the transmission of said message; that it is only liable upon an averment and proof of *gross negligence*, and it is supported by most eminent authority in said claim. *Primrose v. W. U. Tel. Co.* (1894) 154 U. S. 1; *Kiley v. W. U. Tel. Co.*, 109 N. Y. 231; *W. U. Tel. Co. v. Stevenson*, 128 Pa. St. 442, and many other cases. Moreover such is the latest authoritative statement of the law on this subject by this court. *Wann v. Tel. Co.*, 37 Mo. 472.

At the threshold, then, the question arises, shall this court adhere to the ruling in the *Wann* case? The reasoning of that case which was the first in which this court was called upon to construe the statute of 1855, sections 5 and 6, page 1521, was that the transmission of messages by electricity was so seriously affected by atmospheric causes which were uncontrollable that it would be ruinous to deny telegraph companies the right to limit their liability to any extent short of *gross negligence*. In other words, if that decision is to stand it simply means that in this state telegraph companies are not liable for negligence because all their messages are sent subject to this same stipulation exempting them from all liability for the negligence of their servants in transmitting messages.

Ought such a precedent to be longer followed? Is it not contrary to a sound public policy which denies to common carriers and other agencies which conduct a public, as contradistinguished from a private, business, the right to stipulate against their own negligence? We unhesitatingly answer in the affirmative. Loth as we are to overrule a decision that has stood so long, we are convinced it can not be longer maintained on principle. It was rendered when the system of telegraphic communication was yet in a crude state. The difficulties which then appeared to the courts to be so serious

have largely vanished. The art of telegraphy in the thirty years that have since intervened has been reduced to comparative exactness, and when as in this case there is no evidence whatever of atmospheric disturbances or unfavorable conditions it is very plain that an error by which *thirteen* is distorted into *nineteen* is caused either by careless operators or imperfect and insufficient instruments and appliances. Since that decision was made the relation of the telegraph to the commercial and social intercourse of the world has excited the most thorough and critical discussion, and as might be expected, many contrary views have been expressed and many conflicting adjudications rendered.

It is because the reasons which induced the decision in the *Wann* case do not in our opinion any longer obtain that we are constrained to reverse that decision. It can not be maintained that the same degree of responsibility should attach to persons or corporations engaged in transmitting intelligence by a system which was as yet crude, their operators untrained, and its appliances only experimental, and a system which, after fifty years of experience with all the adventitious aids of modern science, has been perfected in all its parts, both as to suitable instruments and the opportunity afforded to employ expert and experienced operators. While it was anticipated that this new method of communication would revolutionize old methods, no one thirty years ago could have predicted how essential and indispensable the telegraph would become to the commercial and social interests of the whole world. It occupies a unique and peculiar place and all analogies to former agencies fail when we come to apply rules of liability.

Thus at first they were called and adjudged to be common carriers, but criticisms of this title brought about a complete abandonment by the courts of that

appellation. Equally unfortunate was the endeavor to class them as private bailees. They are not bailees in any proper legal sense. What then is their legal attitude? When this question is correctly answered, just legal principles can be applied.

They are corporations created for public benefit, endowed with special privileges, such as the right of eminent domain, and perform the most important functions of commerce, supplanting, in cases where celerity and rapid transmission of intelligence is necessary, the postal service of the government. Their business intimately concerns the public, and on this account the government assumes and has the right to regulate their business so as to insure impartiality of service and prevent the exaction of unreasonable tolls. Many and varied interests are dependent upon them. From their exceptional position it is in their power by a corrupt use of their knowledge and information to reap unconscionable advantages in the marts of trade, or by their negligence entail ruin and disaster upon individuals and communities. Having these exceptional advantages and enjoying a practical monopoly, every reason exists why they should be held to a rigid accountability for the negligence of their servants and employees.

Without rendering them liable as insurers or holding them for the action of the elements over which they have no control, sound judicial reasoning does demand that they should be required to perform their duties in a careful and diligent manner and that they should respond for the negligence of their servants. Why not? Such a rule entails no hardship. It is less onerous than that exacted of common carriers of goods, and no greater than is required of carriers of passengers to whose care is committed the lives and limbs of the public. Their duty springs not alone as a private

bailee's does, from contract, but is the result of the character of their business and the laws regulating them. They voluntarily engage in the business; they solicit and receive the confidence of the public, and their occupation requires small outlay compared to the profits realized. Having undertaken to transmit the message, why should they not be held to a careful performance of that duty and be liable for a negligent disregard thereof? Why should they be permitted to demand an extra half toll for the faithful performance of a duty for which they have already charged a reasonable price? They have absolute control of their employees, select their own instruments, own their own wires, and invariably demand payment in advance.

Notwithstanding our respect for the learned courts which have held they are not liable for negligence, we can not concur in that view. In the language of the supreme court of Tennessee in *Marr v. Tel. Co.*, 85 Tenn. *loc. cit.* 545, we hold that this stipulation constitutes "but an artful arrangement and device by which the consequences of their own negligence is thrown upon the shoulders of their customers, and they are [thus] enabled to conduct business with no responsibility beyond that of the most trivial character for their own want of due care."

We hold it utterly unreasonable and contrary to all the analogies of the law and sound public policy to allow such companies to thus stipulate against liability for mistakes caused by their own negligence.

Moreover we hold that the distinction between negligence and *gross* negligence contended for by defendant does not exist in this state. It was pointed out by the learned judge who wrote the *Wann* case, in the subsequent case of *McPheeters v. Railroad*, 45 Mo. 22, that "there is no difference between negligence and *gross* negligence, the latter being nothing more than

the former, with the addition of a vituperative epithet." *Grill v. Collier Co.*, 35 L. J. C. P. (N. S.) 321; *Lemon v. Chanslor*, 68 Mo. 358; *Wilson v. Brett*, 11 M. & W. 113: *Hinton v. Dibbin*, 2 Q. B. (A. & E. N. S.) 646; *Railroad v. Arms*, 91 U. S. 494; Beven on Negligence, p. 43; Gray, Com. by Tel., p. 66; *Telegraph Co. v. Griswold*, 37 Ohio St. 301.

Many of the courts of this country adopted the view pronounced in the *Wann* case in the earlier stages of the discussion, but the tendency of judicial decision at present is that these companies should be held to the exercise of ordinary care, that is to say, they are bound to have suitable instruments and competent servants and see that the service rendered to their patrons is performed with the care and skill requisite to their peculiar undertaking. Their reasons for so holding are entirely satisfactory to us. *Ayer v. W. U. Tel. Co.*, 79 Maine, 493; *Tyler v. W. U. Tel. Co.*, 60 Ill. 421; *Telegraph Co. v. Griswold*, 37 Ohio St. 301; *W. U. Tel. Co. v. Crall*, 38 Kan. 679; *W. U. Tel. Co. v. Howell*, 38 Kan. 685; Bigelow, Lead. Cas. Torts, 602; *W. U. Tel. Co. v. Allen*, 25 Am. and Eng. Corp. Cas. 535; *Marr v. Telegraph Co.*, 85 Tenn. 529; *Sweatland v. Tel. Co.*, 27 Iowa, 433; *Harkness v. Tel. Co.*, 73 Iowa, 190.

In *Sweatland v. Tel. Co.*, 27 Iowa, 433, Judge Dillon criticises the *Wann* case in these words: "There is a *dictum* in *McAndrew's Case*—the first case which arose (17 Com. B. 3, 1835), to the effect that by regulations the companies may protect themselves from liability for mistakes in unrepeated messages, except those caused by their *gross* negligence, and this expression has been incautiously copied and used *arguendo* by other courts, as for instance in *Wann v. Tel. Co.*, 37 Mo. 472."

The *McAndrew* case was an English case and based

upon the English doctrine that a common carrier may contract against his own negligence, a doctrine repudiated by all American courts except perhaps New York. See, also, *W. U. Tel. Co. v. Fontaine*, 58 Ga. 433; *W. U. Tel. Co. v. Blanchard*, 68 Ga. 299; *W. U. Tel. Co. v. Cohen*, 73 Ga. 522; *Gillis v. Tel. Co.* (1889) 61 Vt. 461; *Thompson v. Tel. Co.*, 64 Wis. 531; *W. U. Tel. Co. v. Short*, 53 Ark. 434.

Because we think that both reason and the weight of authority are against the decision in the *Wann* case, and as no rule of property is involved, that case is overruled.

II. Having reached the conclusion that the defendant was bound to exercise ordinary care in transmitting the message to plaintiffs, the next inquiry arises, was there sufficient evidence to justify the verdict? Did plaintiffs establish a *prima facie* case?

It was established beyond peradventure that the message was not transmitted as it was delivered to defendant; that plaintiffs acted upon it as received by them. When this was shown a *prima facie* case of negligence was established and the burden of disproving the negligence was cast upon defendant, and it made no explanation whatever. *W. U. Tel. Co. v. Blanchard*, 68 Ga. 299; Gray, Com. by Tel., sec. 77, and authorities cited; *Tyler v. Tel. Co.*, 60 Ill. 421; *Smith v. Telegraph Co.*, 57 Mo. App. 259; *Telegraph Co. v. Griswold*, 37 Ohio St. 301–313; *Bartlett v. Tel. Co.*, 62 Me. 209; *W. U. Tel. Co. v. Carew*, 15 Mich. 525.

III. There was no error in admitting in evidence section 1329 of the statutes of Iowa, which provides that "the proprietor of a telegraph is liable for all mistakes in transmitting messages made by any person in his employment and for all damages resulting from a failure to perform any of the duties required by law,"

and the testimony of Judge E. H. Stiles, who for many years was the official reporter of the decisions of the supreme court of Iowa, and who was first qualified as being familiar with the unwritten law of Iowa. The objection was simply that it was incompetent, irrelevant, and immaterial, and the message was not governed by the laws of that state.

The contract was made in Iowa, and according to its terms it was to be partially performed in that state. Indeed it is quite evident that its breach occurred in that state. Does the circumstance that it was to be partially performed in Missouri exempt it from the laws of Iowa? We think most clearly not. Like a contract of affreightment its validity and interpretation ordinarily is to be governed by the law of the state in which it was made. The statute of Iowa in no sense attempts to regulate interstate communication by telegram. Both parties to this agreement for the transmission of the message resided in Iowa. The tariff was paid and defendant entered upon the performance of the contract in that state. The statute and laws of Iowa were therefore pertinent and admissible and determined the effect of said contract. *McDaniel v. Railroad*, 24 Iowa, 416; *Liverpool, etc., Steam Co. v. Ins. Co.*, 129 U. S. 457.

IV. But it is urged that even if defendant is liable for negligence under the circumstances, still the loss of the difference between the price received and the actual market value of the lot is not the proximate result of that negligence, in other words is not the natural and reasonable consequence of defendant's mistake, and the principle is invoked that no one can recover damages which he can avoid by diligent effort upon his own part.

Let us examine this view of the case. This message was not in cipher. The defendant was fully ad-

vised of its importance on the face of the message, and after being so advised its agent assured plaintiff that it had been repeated and she could rely upon its correctness. In this way plaintiff was led to believe she was offered $1,900 for her property. Being willing to part with it for that sum she wired acceptance of the proposition made. The proposal was only $1,300, but in this way she was made to accept that proposal. Her agent was clothed not only with apparent but actual authority to sell for $1,300 so far as he was advised. Being thus empowered to sell, he made a binding contract and accepted a part of the purchase money. The deed was forwarded and he delivered it. All this was done upon reliance on the correctness of defendant's action. Could a more natural consequence ever follow a transaction than this loss did upon the mistake of defendant? Does it lie in defendant's mouth to speculate how plaintiff or her agent by the exercise of care which it failed to exercise might have avoided her contract with the purchaser? Has the defendant the right to require plaintiff to enter upon a long and doubtful litigation to rescind the contract which was fully executed by delivery of her deed and the receipt of the purchase money? We most clearly think not.

The cases cited by learned counsel do not meet this case. Here the damages are the direct result of defendant's negligence. Moreover they had fully accrued when plaintiff discovered the mistake. There was no means of avoiding them except to sue the blameless purchaser or the negligent company. She chose the latter course and we think properly.

Plaintiff's agent received her instructions by means of defendant's wire and acted in good faith and it would seem he ought not be mulcted in damages for so doing.

The purchaser dealt not by means of the telegraph but directly with the agent apparently clothed with full power to sell. His vendor had selected the telegraph as the means of communication and as between vendor and vendee the vendor should bear the loss occasioned by that means, in the absence of any evidence of fraud or knowledge of error on part of the vendee.

In this case the question does not arise as to whether plaintiff was bound by the acts of the telegraph company as her agent. She was bound by the act of her own agent who entered into a binding contract in her name with the vendee. We think the proper measure of damages under the circumstances was the difference between the actual market value of the lot and the price received by the mistake occasioned by defendant's negligence.

V. As to interest, as it was conceded on the trial that interest was recoverable and defendant's counsel named the amount at $100, it is clearly no ground for reversing the case. While the jury might or might not give it, when both parties act upon the presumption that if a recovery is justifiable interest should follow, it presents no ground of substantial error. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.